No. 22-1395

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

ARKANSAS STATE CONFERENCE NAACP, *et al.*,

Plaintiffs-Appellants

v.

ARKANSAS BOARD OF APPORTIONMENT, *et al.*,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

# BRIEF OF THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL

KRISTEN CLARKE
Assistant Attorney General

ERIN H. FLYNN
JONATHAN L. BACKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3528
Jonathan.Backer@usdoj.gov

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES

INTEREST OF THE UNITED STATES ....................................................................1

STATEMENT OF ISSUE AND APPOSITE CASES ...............................................2

SUMMARY OF ARGUMENT ..............................................................................3

ARGUMENT

THE DISTRICT COURT ERRED IN DISMISSING THIS CASE, BOTH BECAUSE THE EXISTENCE OF A CAUSE OF ACTION IS NOT JURISDICTIONAL AND BECAUSE PRIVATE PLAINTIFFS CAN ENFORCE SECTION 2 OF THE VRA ........................ 5

A. *The Existence Of A Cause Of Action Is Not Jurisdictional*...................5

B. *Supreme Court And Eighth Circuit Precedents That Congress Has Ratified Establish That A Private Right Of Action Exists To Enforce Section 2* .......................................................................6

1. *Supreme Court Precedent* ..........................................................6

2. *Eighth Circuit And Other Lower-Court Precedent* ..................10

3. *Congressional Ratification* .....................................................12

C. *The VRA's Text Evinces Congress's Intent To Provide A Private Right Of Action To Enforce Section 2* ....................................14

1. *Section 2 Contains Rights-Creating Language* ........................15

2. *Congress Intended To Provide A Private Remedy To Enforce Section 2* .....................................................................16

Appellate Case: 22-1395 Page: 2 Date Filed: 04/22/2022 Entry ID: 5150045

**TABLE OF CONTENTS (continued):** **PAGE**

a. *Section 2's Rights-Creating Language Is Critical Evidence Of Congress's Intent To Provide A Private Remedy* ....16

b. *Voting Rights Typically Are Privately Enforced* ....17

c. *Several VRA Provisions Evince Congress's Understanding That Section 2 Can Be Privately Enforced* ....18

D. *In The Alternative, Private Plaintiffs Can Enforce The Rights Conferred By Section 2 Through Section 1983* ....25

CONCLUSION ....29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE



Appellate Case: 22-1395 Page: 3 Date Filed: 04/22/2022 Entry ID: 5150045

## TABLE OF AUTHORITIES

**CASES:** **PAGE**


*Alexander* v. *Sandoval*, 532 U.S. 275 (2001) .................................................. *passim*

*Allen* v. *State Bd. of Elections*, 393 U.S. 544 (1969)...................................... *passim*

*Alpha Phi Alpha Fraternity Inc.* v. *Raffensperger*, No. 1:21-CV-5337-SCJ, 2022 WL 633312 (N.D. Ga. Feb. 28, 2022)..................................................12

*Brnovich* v. *Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) ...................... 8-9, 13

*Buckhannon Bd. & Care Home, Inc.* v. *West Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001).....................................................................24

*Cannon* v. *University of Chi.*, 441 U.S. 667 (1979) ................................... 10, 16-17

*Charleston Hous. Auth.* v. *U.S. Dep't of Agric.*, 419 F.3d 729 (8th Cir. 2005) ..........................................................................5

*Chisom* v. *Roemer*, 501 U.S. 380 (1991) ......................................................... 15-16

*City of Mobile* v. *Bolden*, 446 U.S. 55 (1980) .................................................. 13-14

*City of Rancho Palos Verdes* v. *Abrams*, 544 U.S. 113 (2005)......................... 26-27

*Cross* v. *Fox*, 23 F.4th 797 (8th Cir. 2022)...............................................................5

*Donnell* v. *United States*, 682 F.2d 240 (D.C. Cir. 1982), cert. denied, 459 U.S. 1204 (1983)...............................................................25

*Georgia State Conf. of NAACP* v. *Georgia*, 269 F. Supp. 3d 1266 (N.D. Ga. 2017) (three-judge court) ..........................11

*Gonzaga Univ.* v. *Doe*, 536 U.S. 273 (2002)................................................ 4, 25-27

*In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059 (8th Cir. 2017) (en banc), cert. denied, 138 S. Ct. 647 (2018)...............................................................8

**CASES (continued):** **PAGE**


*League of Latin Am. Citizens* v. *Abbott*,
No. EP-21-CV-00529-DCG-JES-JVB,
2021 WL 5762035 (W.D. Tex. Dec. 3, 2021) (three-judge court)................11

*Lorillard* v. *Pons*, 434 U.S. 575 (1978)..................................................12

*Mader* v. *United States*, 654 F.3d 794 (8th Cir. 2011) (en banc)..............................5

*Maine* v. *Thiboutot*, 448 U.S. 1 (1980)..................................................25

*Marks* v. *United States*, 430 U.S. 188 (1977)..................................................9

*Mixon* v. *Ohio*, 193 F.3d 389 (6th Cir. 1999)..................................................11

*Morse* v. *Republican Party of Va.*, 517 U.S. 186 (1996)................................ *passim*

*Nevada Dep't of Hum. Res.* v. *Hibbs*, 538 U.S. 721 (2003)..................................22

*Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) (per curiam)...............24

*Perry-Bey* v. *City of Norfolk*, 678 F. Supp. 2d 348 (E.D. Va. 2009).......................11

*Roberts* v. *Wamser*, 883 F.2d 617 (8th Cir. 1989)........................................ *passim*

*Schwier* v. *Cox*, 340 F.3d 1284 (11th Cir. 2003)..................................................27

*Shelby Cnty.* v. *Lynch*, 799 F.3d 1173 (D.C. Cir. 2015),
cert. denied, 577 U.S. 1119 (2016)..................................................25

*Singleton* v. *Merrill*, No. 2:21-cv-1530-AMM,
2022 WL 265001 (N.D. Ala. Jan. 24, 2022) (three-judge court),
appeal docketed, No. 21-1086 (S. Ct. Feb. 7, 2022)....................................11

*South Carolina* v. *Katzenbach*, 383 U.S. 301 (1966)............................................22

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998)................................3, 5





Appellate Case: 22-1395 Page: 5 Date Filed: 04/22/2022 Entry ID: 5150045

**CASES (continued):** **PAGE**

*Texas Dep't of Hous. & Cmty. Affs.* v. *Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015) ........ 12

*Thornburg* v. *Gingles*, 478 U.S. 30 (1986) ........ 13-14

*United States* v. *Raines*, 362 U.S. 17 (1960) ........ 17-18

*Veasey* v. *Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014) ........ 11

*Washington* v. *Finlay*, 664 F.2d 913 (4th Cir. 1981), cert. denied, 457 U.S. 1120 (1982) ........ 9

**CONSTITUTION:**

U.S. Const. Amend. XIV ........ 22

U.S. Const. Amend. XV ........ 22

**STATUTES:**

Civil Rights Act of 1964
- 42 U.S.C. 2000a-3(b) (Title II) ........ 24
- 42 U.S.C. 2000d *et seq.* (Title VI) ........ 10
- 52 U.S.C. 10101 ........ 21, 27

Dictionary Act, 1 U.S.C. 1 ........ 18

Voting Rights Act of 1965
- 52 U.S.C. 10301 ........ 1-2
- 52 U.S.C. 10301(a) ........ 15
- 52 U.S.C. 10302 ........ 20-22
- 52 U.S.C. 10304 ........ 16
- 52 U.S.C. 10304(a) ........ 7
- 52 U.S.C. 10306(a) ........ 7
- 52 U.S.C. 10308(d) ........ 17
- 52 U.S.C. 10308(e) ........ 17, 19-20
- 52 U.S.C. 10308(f) ........ 18, 20
- 52 U.S.C. 10310(e) ........ 23

**STATUTES (continued):** **PAGE**

42 U.S.C. 1983 .............................................................................. 4, 21, 25

Pub. L. No. 89-110, 79 Stat. 437 (1965)..............................................................22

Pub. L. No. 91-285, 84 Stat. 314 (1970)..............................................................13

Pub. L. No. 94-73, 89 Stat. 400 (1975)...................................................... 13, 20, 23

Pub. L. No. 97-205, 96 Stat. 131 (1982)..............................................................13

Pub. L. No. 109-246, 120 Stat. 577 (2006)...........................................................13

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 196, 94th Cong., 1st Sess. (1975) ..................................................13

H.R. Rep. No. 227, 97th Cong., 1st Sess. (1981) .......................................... *passim*

H.R. Rep. No. 397, 91st Cong., 1st Sess. (1969)...................................................13

H.R. Rep. No. 439, 89th Cong., 1st Sess. (1965) ..................................................16

S. Rep. No. 295, 94th Cong., 1st Sess. (1975).......................................... 13, 20, 23

S. Rep. No. 417, 97th Cong., 2d Sess. (1982) ............................................... *passim*

**RULE:**

Federal Rule of Appellate Procedure 29(a) ............................................................2

**MISCELLANEOUS:**

Black's Law Dictionary (11th ed. 2019) ...............................................................11

Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act*, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu ................................................................ 12, 27

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 22-1395

ARKANSAS STATE CONFERENCE NAACP, *et al.*,

Plaintiffs-Appellants

v.

ARKANSAS BOARD OF APPORTIONMENT, *et al.*,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

BRIEF OF THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL

## INTEREST OF THE UNITED STATES

This case presents the important question whether private plaintiffs can enforce Section 2 of the Voting Rights Act (VRA), 52 U.S.C. 10301. In numerous cases, including before the Supreme Court, the United States has argued successfully that both private plaintiffs and the Attorney General can enforce the VRA. See U.S. Amicus Br. at 25-27 & n.15, *Morse* v. *Republican Party of Va.*, 517 U.S. 186 (1996) (No. 94-203); U.S. Amicus Br. at 8 n.7, *Allen* v. *State Bd. of Elections*, 393 U.S. 544 (1969) (Nos. 3, 25, 26, and 36). The United States also

filed a statement of interest below, reiterating this longstanding view. R.Doc. 71.[1] Given both the importance of this issue to the effective enforcement of the VRA and the major upheaval in voting-rights law that an affirmance of the district court's decision would produce, the United States has a substantial interest in the proper resolution of this appeal.

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF ISSUE AND APPOSITE CASES

Following the 2020 decennial census, the Arkansas Board of Apportionment adopted a redistricting plan for the Arkansas House of Representatives and filed it with the Secretary of State. R.Doc. 1, at 3. When the plan took effect 30 days later, plaintiffs-appellants Arkansas State Conference NAACP and Arkansas Public Policy Panel filed suit, alleging that the new map has a discriminatory result in violation of Section 2 of the VRA, 52 U.S.C. 10301, because it dilutes the voting power of Black voters. R.Doc. 1, at 3, 9. Plaintiffs also requested that the district court preliminarily enjoin use of the map. R.Doc. 2. The court held a five-day evidentiary hearing on plaintiffs' motion and, after stating that plaintiffs had "a

[1] "R.Doc. __, at __" refers to records on the district court docket by docket number and internal pagination. "Add. __" refers to page numbers in the addendum filed with appellants' opening brief. "Tr., Vol. __, __" refers to the preliminary-injunction hearing transcript by volume and page number.

Appellate Case: 22-1395 Page: 9 Date Filed: 04/22/2022 Entry ID: 5150045

strong merits case," dismissed their case on the ground that no private right of action exists to enforce Section 2 (an issue that the court raised *sua sponte*). Add. 3, 17; R.Doc. 102. This appeal raises the following question:

Whether the district court erred in treating as jurisdictional the existence of a cause of action and incorrectly concluded that private plaintiffs cannot enforce Section 2 of the VRA.

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998)

*Morse* v. *Republican Party of Va.*, 517 U.S. 186 (1996)

*Allen* v. *State Bd. of Elections*, 393 U.S. 544 (1969)

*Roberts* v. *Wamser*, 883 F.2d 617 (8th Cir. 1989)

## SUMMARY OF ARGUMENT

In dismissing plaintiffs' case, the district court (1) incorrectly treated the existence of a cause of action as jurisdictional, and (2) incorrectly held that private plaintiffs cannot enforce Section 2 of the VRA. This Court should reverse the judgment and remand the case to the district court for further proceedings.

As an initial matter, the district court incorrectly applied Supreme Court and Eighth Circuit precedent by raising *sua sponte* whether Section 2 of the VRA is privately enforceable. That question is not jurisdictional, and the district court was wrong to dismiss plaintiffs' suit. In any event, Supreme Court and Eighth Circuit precedents—*Morse* v. *Republican Party of Virginia*, 517 U.S. 186 (1996), *Allen* v.

*State Board of Elections*, 393 U.S. 544 (1969), and *Roberts* v. *Wamser*, 883 F.2d 617 (8th Cir. 1989)—establish that a private right of action exists to enforce Section 2. Those decisions are binding on this panel and have been ratified by Congress.

The framework set forth in *Alexander* v. *Sandoval*, 532 U.S. 275 (2001), reinforces the conclusion that Section 2 is enforceable through an implied private right of action. Section 2 indisputably contains rights-creating language, and Congress's intent to provide a private remedy to enforce the statute can be inferred from the personal nature of the rights that the VRA protects and from several other VRA provisions that evince Congress's understanding that Section 2 is privately enforceable.

But even if Congress did not comtemplate a Section-2 specific implied right of action, the statute would nevertheless be enforceable under 42 U.S.C. 1983 to redress violations of the statute committed by persons acting under color of state law. See *Gonzaga Univ.* v. *Doe*, 536 U.S. 273, 284 (2002).

## ARGUMENT

## THE DISTRICT COURT ERRED IN DISMISSING THIS CASE, BOTH BECAUSE THE EXISTENCE OF A CAUSE OF ACTION IS NOT JURISDICTIONAL AND BECAUSE PRIVATE PLAINTIFFS CAN ENFORCE SECTION 2 OF THE VRA

### *A. The Existence Of A Cause Of Action Is Not Jurisdictional*

The district court dismissed this case only because it improperly raised *sua sponte* the question whether private plaintiffs can enforce Section 2 of the VRA—an issue the court acknowledged defendants had "waived" at the preliminary-injunction stage unless that question is jurisdictional. R.Doc. 55; Add. 31. "It is firmly established," however, "that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). In raising the private-right-of-action question, the district court relied on a recent Eighth Circuit decision that erroneously characterized the absence of an implied cause of action as a jurisdictional issue. Add. 32 (citing *Cross* v. *Fox*, 23 F.4th 797, 802-803 (8th Cir. 2022)). But *Cross* contradicted earlier Eighth Circuit decisions recognizing that the absence of a cause of action is not jurisdictional. *E.g.*, *Charleston Hous. Auth.* v. *U.S. Dep't of Agric.*, 419 F.3d 729, 736 n.3 (8th Cir. 2005). The district court was bound by this earlier (and correct) precedent. *Mader* v. *United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("[W]hen faced with conflicting panel

Appellate Case: 22-1395 Page: 12 Date Filed: 04/22/2022 Entry ID: 5150045

opinions, the earliest opinion must be followed.”). This Court therefore should reverse the judgment and remand the case for further proceedings.

*B. Supreme Court And Eighth Circuit Precedents That Congress Has Ratified Establish That A Private Right Of Action Exists To Enforce Section 2*

Even if the question whether private plaintiffs can enforce Section 2 of the VRA were properly before the district court, it incorrectly answered that question by badly misreading binding precedent. The Supreme Court’s decisions in *Morse* v. *Republican Party of Virginia*, 517 U.S. 186 (1996), and *Allen* v. *State Board of Elections*, 393 U.S. 544 (1969), as well as this Court’s decision in *Roberts* v. *Wamser*, 883 F.2d 617 (8th Cir. 1989), each make clear that a private right of action exists to enforce Section 2. Congress ratified those decisions, and numerous others involving Section 2 claims brought by private plaintiffs, when it repeatedly amended the VRA without disclaiming the existence of a private right of action and when it added provisions that rest on its understanding that one exists.

*1. Supreme Court Precedent*

The Supreme Court recognized more than 25 years ago that, although Section 2 “provides no right to sue on its face, ‘the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.’” *Morse*, 517 U.S. at 232 (opinion of Stevens, J., joined by Ginsburg, J.) (alteration in original) (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982) (1982 Senate Report)); accord *id.* at 240 (opinion of Breyer, J., concurring in the judgment,

joined by O'Connor & Souter, JJ.). Twice the Court has confronted the question whether the VRA contains implied rights of action, and both times the Court has answered that question in the affirmative. In *Allen*, the Court found a private right of action to enforce Section 5 of the VRA, 52 U.S.C. 10304(a), which required jurisdictions covered by Section 4(b) of the Act to obtain preclearance from the Attorney General or the United States District Court for the District of Columbia before subjecting any "person" to a new voting qualification or procedure. *Allen*, 393 U.S. at 556-557. Decades later, in *Morse*, the Court implied a private right of action to enforce Section 10 of the VRA. *Morse*, 517 U.S. at 232-234. Section 10 prohibits jurisdictions from conditioning the right to vote on payment of a poll tax, because such a tax can deny or abridge "the constitutional right of citizens to vote." 52 U.S.C. 10306(a). The Court recognized the rights of action to enforce Sections 5 and 10 because "[t]he achievement of the [VRA's] laudable goal" to "make the guarantees of the Fifteenth Amendment finally a reality for all citizens * * * could be severely hampered * * * if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Allen*, 393 U.S. at 556; see also *Morse*, 517 U.S. at 231.

*Morse*'s conclusion that private plaintiffs can enforce Section 10 flows directly from its recognition that Congress intended the same for Section 2. The *Morse* Court held that private plaintiffs must be able to enforce Section 10 because

"[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language." 517 U.S. at 232; accord *id.* at 240 (Breyer, J., concurring) (stating that *Allen*'s rationale "applies with similar force not only to § 2 but also to § 10"). Because private plaintiffs' ability to enforce Section 2 was the linchpin to *Morse*'s holding, the district court's conclusion here that Section 2—unlike Sections 5 and 10—lacks a private right of action is not just anomalous, but illogical.

The district court wrongly dismissed *Allen* as "relegated to the dustbin of history" and the conclusion by five Justices in *Morse* that *Allen's* rationale applies with equal force to Section 2 as "purely dicta." Add. 25, 27 n.113. Such disregard for Supreme Court case law contradicts this Court's directive that "federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings," particularly when, as here, the earlier pronouncements are "not enfeebled by any [later] statement." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc) (citation and internal quotation marks omitted; brackets in original), cert. denied, 138 S. Ct. 647 (2018). To be sure, the district court relied on Justice Gorsuch's recent concurrence in *Brnovich* v. *Democratic National Committee*, 141 S. Ct. 2321 (2021), which characterized whether Section 2 is privately enforceable as "an open

question." *Id.* at 2350 (Gorsuch, J., concurring); see Add. 16. But Justice Gorsuch cited in support of that proposition only a Fourth Circuit opinion that predated *Morse* and "[a]ssum[ed] without deciding" that Section 2 is privately enforceable. *Washington* v. *Finlay*, 664 F.2d 913, 926 (4th Cir. 1981), cert. denied, 457 U.S. 1120 (1982). Thus, neither the *Brnovich* concurrence nor *Washington*—which are not binding on this Court—concluded that private plaintiffs cannot enforce Section 2. The district court should not have upended decades of VRA case law on so slender a basis.

In addition, the district court erroneously demoted *Morse* by emphasizing that the case "had no majority opinion." Add. 26. True, but irrelevant: Five Justices in *Morse* shared the conclusion that a private right of action exists to enforce Sections 2 and 5 of the VRA, and that private plaintiffs likewise should be able to enforce Section 10 of the VRA. 517 U.S. at 232 (Stevens, J., joined by Ginsburg, J.); accord *id.* at 240 (Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.). Under *Marks* v. *United States*, 430 U.S. 188, 193 (1977), that conclusion constitutes a holding of the Court.

The district court also characterized *Alexander* v. *Sandoval*, 532 U.S. 275 (2001), as invalidating *Morse* and *Allen* (Add. 26-27), but *Sandoval* strongly supports the *opposite* conclusion. Although the holding for which *Sandoval* is best known involves the question whether a private right of action existed to enforce a

*regulation* under Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*, the case separately held that it "must be taken as given" that a private right of action exists to enforce the *statute*'s prohibition against disparate treatment, despite no express provision of one. *Sandoval*, 532 U.S. at 279. That is because the "reasoning" of an earlier decision finding a cause of action in another statute "embraced the existence of a private right to enforce Title VI as well." *Id.* at 280 (citing *Cannon* v. *University of Chi.*, 441 U.S. 667, 694 (1979)). Similarly, the private enforceability of the VRA's protections, including Section 2, was foundational to *Morse* and *Allen*. See pp. 6-8, *supra*. Moreover, the Supreme Court explained in *Sandoval* that Congress also "ratified" *Cannon*'s reasoning by making changes to Title VI that could not "be read except as validation of *Cannon*'s holding." *Sandoval*, 532 U.S. at 280 (citation omitted). As discussed below, Congress similarly ratified the reasoning of *Morse* and *Allen*. See pp. 12-14, *infra*. Accordingly, *Morse* and *Allen* remain binding as to whether private plaintiffs can enforce Section 2.

*2. Eighth Circuit And Other Lower-Court Precedent*

The district court also brushed aside this Court's consideration of this issue in *Roberts* as "dicta." Add. 29. But *Roberts* expressly held that "a private litigant attempting to protect his right to vote [is] a proper party to effectuate the goals of the Act"; only after doing so did it separately conclude that an unsuccessful

candidate does not fall within that cause of action. 883 F.2d at 621 (citing *Allen*, 393 U.S. at 557). A holding is "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such decision." *Holding*, Black's Law Dictionary (11th ed. 2019). This Court could not have concluded that an unsuccessful candidate lacks statutory standing to sue under Section 2 without first resolving whether *some* private plaintiffs can sue under the statute. The resolution of that question in the affirmative was therefore pivotal, making *Roberts*'s recognition of a private right of action binding precedent.

*Roberts*'s holding accords with a vast body of lower-court decisions that have held that Section 2 can be enforced by private plaintiffs.[2] Indeed, since 1982,

---

[2] See, *e.g.*, *Mixon* v. *Ohio*, 193 F.3d 389, 406 & n.12 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the [VRA]."); *Singleton* v. *Merrill*, No. 2:21-cv-1530-AMM, 2022 WL 265001, at *79 (N.D. Ala. Jan. 24, 2022) (three-judge court) (stating that to hold otherwise "would badly undermine the rationale offered by the Court in *Morse*" and that "[e]ven if the Supreme Court's statements in *Morse* about Section Two are technically dicta, they deserve greater respect than Defendants would have us give"), appeal docketed, No. 21-1086 (S. Ct. Feb. 7, 2022); *League of Latin Am. Citizens* v. *Abbott*, No. EP-21-CV-00529-DCG-JES-JVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) (three-judge court) (denying a motion to dismiss arguing that Section 2 lacks a private right of action); *Georgia State Conf. of NAACP* v. *Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court) ("Section 2 contains an implied private right of action." (citing *Morse*, 517 U.S. at 232)); *Veasey* v. *Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) (holding that "individual voter[s]" and organizations have the "power to enforce" Section 2); *Perry-Bey* v. *City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) ("The [VRA] creates a private cause of action."). At least one court has expressly rejected the district court's holding here that private plaintiffs cannot enforce

(continued…)

private plaintiffs have brought more than 350 cases alleging violations of Section 2 that have resulted in judicial decisions, without any court (until now) holding that Section 2 lacks a private right of action. See Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act* at 40, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu (providing data that are the basis for this estimate). The district court's decision here stands alone because it is wrong.

*3. Congressional Ratification*

Congress has ratified the consensus view that Section 2 is privately enforceable. As the Supreme Court explained in *Lorillard* v. *Pons*, 434 U.S. 575, 580 (1978), "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." See also *Texas Dep't of Hous. & Cmty. Affs.* v. *Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015) (concluding that Congress had "ratified the unanimous holdings of the Courts of Appeals" that plaintiffs can bring disparate-impact claims under the Fair Housing Act because it was "aware of [the]

(…continued)
Section 2, relying on "the extent and weight of the authority holding otherwise." *Alpha Phi Alpha Fraternity Inc.* v. *Raffensperger*, No. 1:21-CV-5337-SCJ, 2022 WL 633312, at *11 n.10 (N.D. Ga. Feb. 28, 2022).

unanimous precedent" and "made a considered judgment to retain the relevant statutory text").

In repeatedly amending the VRA, Congress has never questioned the uniform view that Section 2 is privately enforceable. Pub. L. No. 91-285, 84 Stat. 314 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982); Pub. L. No. 109-246, 120 Stat. 577 (2006). And Congress has consistently cited *Allen* approvingly. See, *e.g.*, S. Rep. No. 295, 94th Cong., 1st Sess. 16 (1975) (1975 Senate Report); H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975); H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969). Moreover, in the 1982 Senate Report that the Supreme Court called the "authoritative source for legislative intent" behind Section 2, *Thornburg* v. *Gingles*, 478 U.S. 30, 43 n.7 (1986); see also *Brnovich*, 141 S. Ct. at 2332-2333 (discussing the "oft-cited" 1982 Senate Report), Congress "reiterates the existence of the private right of action under section 2." 1982 Senate Report 30; see also H.R. Rep. No. 227, 97th Cong., 1st Sess. 32 (1981) (1981 House Report); see also pp. 20-25, *infra* (discussing changes made to the VRA evincing Congress's understanding that Section 2 is privately enforceable).

Congress had no reason to codify an express right of action to enforce Section 2. The Supreme Court assumed the existence of a private right of action to enforce Section 2 in *City of Mobile* v. *Bolden*, 446 U.S. 55 (1980), which held that

the original version of the statute reached only conduct prohibited by the Fifteenth Amendment. *Id.* at 60-61. Thus, when Congress amended Section 2 in response to *Bolden* to make clear that proof of discriminatory intent is not necessary to establish a violation of the statute, it had no need to revise the statute to expressly provide a private right of action. Pointing to the continued existence of such a right was sufficient. 1982 Senate Report 30; 1981 House Report 32. The Court's decision only a few years later in *Gingles*—a case brought by private plaintiffs—also reflects an understanding that Section 2 is privately enforceable. See 478 U.S. at 50-52 (describing what "the minority group must be able to demonstrate" or "show" to establish a Section 2 violation—language that is inconsistent with the proposition that only the Attorney General can bring suit). Similarly, Congress had no need to codify a private right of action to enforce Section 2 when it amended the VRA in 2006 because, in the interim, the Court had explicitly stated that the statute was privately enforceable. *Morse*, 517 U.S. at 232; accord *id.* at 240 (Breyer, J., concurring).

### *C. The VRA's Text Evinces Congress's Intent To Provide A Private Right Of Action To Enforce Section 2*

Even if the above discussion did not conclusively establish that private plaintiffs can enforce Section 2—and it does—Congress's intent to create a private right of action flows directly from the *Sandoval* framework.

As the district court correctly stated, "*Sandoval* and its progeny don't entirely foreclose the possibility of implied private rights of action." Add. 17. Far from it. Under *Sandoval*, courts determine whether Congress intended to create a private right of action by: (1) making the "critical" determination whether the statute in question contains "rights-creating language"; and, if so, (2) assessing whether Congress has "manifest[ed] an intent to create a private remedy." 532 U.S. at 288-289 (citation and internal quotation marks omitted). Section 2 undeniably contains rights-creating language. Moreover, Congress's intent to create a private remedy to enforce Section 2 is apparent from the very nature of voting rights and from several other VRA provisions that reflect Congress's understanding that Section 2 is privately enforceable.

*1. Section 2 Contains Rights-Creating Language*

Although the district court did not reach the "critical" question whether Section 2 contains rights-creating language, it indisputably does. *Sandoval*, 532 U.S. at 288; Add. 17. The statute provides:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of *the right of any citizen of the United States to vote* on account of race or color, or [membership in a language minority group].

52 U.S.C. 10301(a) (emphasis added). Thus, the statute "grants" individual citzens "a right to be free from" discriminatory voting practices. *Chisom* v. *Roemer*, 501

U.S. 380, 392 (1991) (quoting H.R. Rep. No. 439, 89th Cong., 1st Sess. 23 (1965)). *Allen* relied on similar language to infer Congress's intent to create a private right of action to enforce Section 5. 393 U.S. at 555; see 52 U.S.C. 10304 (providing that "no person shall be denied the right to vote for failure to comply with [a] qualification, prerequisite, standard, practice, or procedure" covered by, but not approved under, Section 5). And *Cannon* held that another statute (Title IX) contains a private right of action by analogy to Section 5's "dispositive language." 441 U.S. at 690. No serious argument can be made that Section 2 lacks rights-creating language.

*2. Congress Intended To Provide A Private Remedy To Enforce Section 2*

Congress's intent to provide a private remedy to enforce Section 2 is shown by: (1) the statute's rights-creating language; (2) the private nature of voting rights; and (3) several VRA provisions that evince Congress's understanding that Section 2 can be privately enforced.

*a. Section 2's Rights-Creating Language Is Critical Evidence Of Congress's Intent To Provide A Private Remedy*

Because Section 2 plainly contains rights-creating language, a strong presumption exists that Congress also intended to create a private remedy to enforce those rights. That is because "the right- or duty-creating language of [a] statute has generally been the most accurate indicator of the propriety of

implication of a cause of action." *Cannon*, 441 U.S. at 690 n.13; see also *Sandoval*, 532 U.S. at 288 (characterizing this component of the private-right-of-action analysis as "critical" because of *Cannon*'s observation that such language is typically dispositive). To be sure, the VRA authorizes civil suits by the United States to enforce the statute's substantive provisions. See 52 U.S.C. 10308(d) and (e). But interpreting the statute to require "each citizen * * * to depend solely on litigation instituted at the discretion of the Attorney General" would leave many Section 2 violations unremedied and "severely hamper[]" the statute's enforcement. *Allen*, 393 U.S. at 556.

*b. Voting Rights Typically Are Privately Enforced*

The presumption that Congress intends to provide a private remedy where it includes rights-creating language is even stronger in the context of Section 2 because voting rights typically are considered "private rights." *United States* v. *Raines*, 362 U.S. 17, 27 (1960). Given that voting rights inhere in individual citizens, Congress's decision to authorize suits by the United States to permit *public* enforcement of Section 2 does not overcome the strong presumption that Congress also intended *private* enforcement of this rights-creating statute. *Allen*, 393 U.S. at 555 n.18 ("[W]e find merit in the argument that the specific references [in the VRA] to the Attorney General were included to give the Attorney General

power to bring suit to enforce what might otherwise be viewed as 'private' rights." (quoting *Raines*, 362 U.S. at 27)).

*c. Several VRA Provisions Evince Congress's Understanding That Section 2 Can Be Privately Enforced*

Congress's intent to provide a private remedy to enforce Section 2 also can be inferred from the text of Sections 12(f), 3, and 14(e) of the VRA.

**Section 12(f)** provides:

> The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to [Section 12 of the VRA] and shall exercise the same without regard to whether *a person asserting rights* under the provisions of [the VRA] shall have exhausted any administrative or other remedies that may be provided by law.

52 U.S.C. 10308(f) (emphasis added). The statutory term "person" is broad and "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." Dictionary Act, 1 U.S.C. 1. Section 12(f) therefore reflects Congress's intent that federal courts have subject-matter jurisdiction over suits to enforce the VRA's substantive provisions—including Section 2—brought by private plaintiffs, as well as by the United States, when it has been given litigating authority. *Allen*, 393 U.S. at 555 n.18 (finding "force" to the argument that Section 12(f) "necessarily implies that private parties may bring suit under the [VRA]"). Indeed, because Congress repeatedly stated its intent for a private right of action to exist under Section 2—see 1982 Senate

Report 30; 1981 House Report 32—it would have understood Section 12(f) as allowing district courts to hear such suits.

The district court acknowledged that Section 12(f) might "cut in * * * favor" of implying a private right of action, but then it wrongly interpreted the provision as merely "referencing" the Attorney General's authority under Section 12(e) of the statute. Add. 20-21. That provision permits the Attorney General to seek a court order requiring an individual's vote to be counted if, within 48 hours of the polls closing, such individual alleges to an election observer appointed under the VRA that she was improperly prohibited from voting. 52 U.S.C. 10308(e). According to the court, subsections 12(e) and (f) "work in combination such that the Attorney General of the United States can quickly bring a § 12(e) suit on behalf of a voter, while the voter can individually bring his or her own suit under state law or other federal law if such law provides a private right of action." Add. 22.

This Court should reject that strained reading because Section 12(f) references "chapters 103 to 107" of the VRA—*i.e.*, the full panoply of the statute's substantive provisions—and not Section 12(e) alone. And whereas subsection (e) provides a narrow authority to the Attorney General tailored to exigent circumstances surrounding casting of ballots, subsection (f) is an omnibus provision granting federal courts subject-matter jurisdiction over *all* VRA claims.

Compare 52 U.S.C. 10308(e), with 52 U.S.C. 10308(f). Finally, Section 12(e) *itself* provides federal courts with subject-matter jurisdiction over claims brought by the Attorney General under that provision. 52 U.S.C. 10308(e) (providing that "the Attorney General may * * * file with *the district court* an application" under Section 12(e) and that "*[t]he district court* shall hear and determine such matters immediately after the filing of such application" (emphases added)). The district court's interpretation of subsections (e) and (f) would render superfluous the latter's broad reference to "a person asserting rights under" the VRA.

**Section 3** similarly reflects Congress's understanding that private plaintiffs can enforce the VRA's substantive provisions—including Section 2—by providing specific remedies to "the Attorney General *or an aggrieved person*" in lawsuits brought "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. 10302 (emphasis added). Congress added the term "aggrieved person" to each of Section 3's remedies when it amended the VRA in 1975, Pub. L. No. 94-73, § 401, 89 Stat. 404, knowing full well that *Allen* had construed the VRA as permitting private suits, 393 U.S. at 556-557; see also 1975 Senate Report 40 (stating that an "aggrieved person" includes "an individual or an organization representing the interests of injured persons").

Although the district court conceded that an "aggrieved person" encompasses private plaintiffs, it concluded that private plaintiffs can invoke

Section 3's provisions not under the VRA—the very statute in which they appear—but under some other statute that the court failed to identify.[3] Add. 22-23 (citation omitted). And despite Section 3 being part of the VRA, the court concluded that remedies under that provision are not available in lawsuits brought under Section 2 as amended—which prohibits both intentional discrimination and voting practices with a discriminatory result—because the statute's safeguards now reach conduct that does not necessarily violate the Fourteenth or Fifteenth Amendment. Add. 23.

The district court's interpretation of Section 3 rests on a fundamental misunderstanding of when a statute "enforce[s] the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. 10302. It wrongly thought that any statute that provides broader protection than what is constitutionally prohibited under the Fourteenth or Fifteenth Amendments does not qualify. But both the Fourteenth and Fifteenth Amendments give Congress authority to "enforce" the

---

[3] At the preliminary-injunction hearing, the district court suggested that Section 3's remedies can be invoked in private lawsuits brought under 42 U.S.C. 1983 to enforce the Fifteenth Amendment. Tr., Vol. V, 1165-1166. That would be an exceptionally oblique way of clarifying that relief is available under some other statute, but not the one in which the language appears. 52 U.S.C. 10302. On the flip side, there is nothing odd about Congress's broad reference to statutes to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments—as opposed to simply referencing the VRA itself—because both the VRA and other statutes enforce those constitutional rights. See, *e.g.*, 42 U.S.C. 1983; 52 U.S.C. 10101.

Amendments' protections, U.S. Const. Amend. XIV, § 5 and Amend. XV, § 2, through prophylactic legislation. See *Nevada Dep't of Hum. Res.* v. *Hibbs*, 538 U.S. 721, 727-728 (2003) (holding in the Fourteenth Amendment context that "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct"); *South Carolina* v. *Katzenbach*, 383 U.S. 301, 327 (1966) (rejecting the argument that the Fifteenth Amendment permits Congress to "do no more than to forbid violations of the Fifteenth Amendment in general terms").

Congress expressly characterized the 1982 amendments to Section 2 as prophylactic legislation to prevent constitutional violations. Pub. L. No. 89-110, 79 Stat. 437 (1965) (describing the original VRA as an act "[t]o enforce to enforce the fifteenth amendment to the Constitution of the United States"); 1982 Senate Report 40 ("[T]o enforce fully the Fourteenth and Fifteenth Amendments, it is necessary that Section 2 ban election procedures and practices that result in a denial or abridgment of the right to vote."); 1981 House Report 31 ("Section 2, as amended, is an exercise of the broad remedial power of Congress to enforce the rights conferred by the Fourteenth and Fifteenth Amendments."). Thus, Section 2 remains a "statute to enforce the voting guarantees of the fourteenth or fifteenth amendment" to which Section 3's private remedies apply. 52 U.S.C. 10302.

**Section 14(e)** bears on the question presented in ways similar to Section 3. It provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, *other than the United States*, a reasonable attorney's fee.

52 U.S.C. 10310(e) (emphasis added). Like Section 3, Section 14(e) reflects Congress's understanding that private plaintiffs can bring claims under the VRA's substantive provisions—including Section 2. Congress added Section 14(e) to the statute in 1975, well aware of *Allen*'s holding. Pub. L. No. 94-73, § 402, 89 Stat. 404; see also 1981 House Report 32 (stating that if private plaintiffs prevail under Section 2, "they are entitled to attorneys' fees under [Section 14(e)] and [42 U.S.C.] 1988"); 1975 Senate Report 40 (finding "appropriate" the award of "attorneys' fees to a prevailing party in suits to enforce the voting guarantees of the Fourteenth and Fifteenth amendments, *and statutes enacted under those amendments*" because "Congress depends heavily on private citizens to enforce the fundamental rights involved" (emphasis added)).

The district court dismissed Section 14(e) for the same reasons that it disregarded Section 3: The provision applies only in "proceeding[s] to enforce the voting guarantees of the fourteenth or fifteenth amendment," which the court did not view as including Section 2 claims. Add. 23-24 (quoting 52 U.S.C. 10310(e)). That reasoning is just as flawed with respect to Section 14(e) as it is with respect to

Section 3. In addition, the court suggested at the preliminary-injunction hearing that the term "prevailing party" in Section 14(e) might refer solely to prevailing defendant States and therefore does not encompass private plaintiffs. Tr., Vol. V, 1161. That suggestion betrays a fundamental misunderstanding of fee-shifting provisions that are commonplace in civil-rights statutes.

"[P]revailing party" is a "legal term of art" with which Congress was intimately familiar in 1975. *Buckhannon Bd. & Care Home, Inc.* v. *West Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602-603 (2001) (specifically listing Section 14(e) of the VRA as an example of the term's technical use). The Supreme Court construed a nearly identical provision in Title II of the Civil Rights Act of 1964, 42 U.S.C. 2000a-3(b), as allowing private plaintiffs to recover attorney's fees whenever they secure a legal victory. *Newman* v. *Piggie Park Enters., Inc.*, 390 U.S. 400, 401-402 (1968) (per curiam). As the Court explained, Title II suits are "private in form only," and when a private plaintiff sues under that statute, "he does so not for himself alone but also as a 'private attorney general.'" *Ibid.* (citations omitted). For that reason, the Court construed the term "prevailing party" broadly "to encourage individuals injured by racial discrimination to seek judicial relief" because "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Ibid.*

When Congress inserted the term "prevailing party" into Section 14, it therefore did so with the plain understanding that that term is tailored to statutes—like Section 2—that allow private plaintiffs to sue as private attorneys general. *Shelby Cnty.* v. *Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the VRA, pursuant to the *Piggie Park* standard, when prevailing parties help[] secure compliance with the statute."), cert. denied, 577 U.S. 1119 (2016); accord *Donnell* v. *United States*, 682 F.2d 240, 245 (D.C. Cir. 1982), cert. denied, 459 U.S. 1204 (1983).

Collectively, Sections 12(f), 3 and 14(e) of the VRA evince Congress's intent to provide a private remedy to enforce Section 2's rights-creating language.

### *D. In The Alternative, Private Plaintiffs Can Enforce The Rights Conferred By Section 2 Through Section 1983*

Even if the VRA did not evince Congress's intent to create a private remedy to enforce Section 2—and it does—the statute would be presumptively enforceable against the defendants here through Section 1983, the general remedy that Congress has provided for private plaintiffs to redress violations of federal rights committed by state actors. See 42 U.S.C. 1983; *Maine* v. *Thiboutot*, 448 U.S. 1, 4 (1980) (holding that "the plain language" of Section 1983 "undoubtedly embraces" suits by private plaintiffs to enforce federal statutory rights).

In *Gonzaga University* v. *Doe*, 536 U.S. 273 (2002), the Supreme Court set forth the test that governs whether private plaintiffs can enforce a federal statute

through Section 1983. First, a court must "determine whether Congress *intended to create a federal right*" in the statute that a plaintiff seeks to enforce. *Id.* at 283. That analysis "is no different from the initial inquiry in an implied right of action case." *Id.* at 285. But once a court determines a federal right exists, that "right is presumptively enforceable by § 1983," and a plaintiff "do[es] not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Id.* at 284.

Although defendants can rebut the presumption that a federal right is enforceable through Section 1983, they can do so only by "demonstrat[ing] that Congress shut the door to private enforcement either [1] expressly, through specific evidence from the statute itself" or "[2] impliedly, by creating a *comprehensive enforcement scheme* that is *incompatible with individual enforcement under § 1983*." *Gonzaga*, 536 U.S. at 284 n.4 (emphases added; citations and internal quotation marks omitted). Specifically, a defendant could rebut the presumption by showing that Congress provided "a more restrictive *private remedy*" for violation of the relevant statute. *City of Rancho Palos Verdes* v. *Abrams*, 544 U.S. 113, 121 (2005) (emphasis added). That showing is rare indeed. Even an express private remedy does not "conclusively" foreclose the possibility that Congress meant such a remedy "to complement, rather than supplant § 1983." *Id.* at 122.

Section 2 unquestionably is a rights-creating statute. See pp. 15-16, *supra*. Defendants therefore bear the burden to rebut the presumption that Section 2 is enforceable through Section 1983. *Gonzaga*, 536 U.S. at 284. Congress clearly did not "shut the door to private enforcement" of Section 2, *id.* at 284 n.4, because "there is certainly no specific exclusion of private actions" in the VRA, *Allen*, 393 U.S. at 555 n.18. Cf. *Schwier* v. *Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (holding that a voting provision of the Civil Rights Act of 1964, 52 U.S.C. 10101, is enforceable by private plaintiffs through Section 1983). Although the VRA plainly also permits the United States to enforce Section 2, the statute provides no explicit "private judicial remedy," much less a "more restrictive" one than Section 1983. *Abrams*, 544 U.S. at 121. Section 2's *public* remedies do not constitute "a comprehensive enforcement scheme" and are "[]compatible with individual enforcement under § 1983," *Gonzaga*, 536 U.S. at 284 n.4. The outsized role of private lawsuits in enforcing Section 2 also demonstrates that private enforcement "complement[s]" public enforcement of the statute. *Abrams*, 544 U.S. at 122; see also Katz et al., *supra*.

Accordingly, Section 2 is enforceable under Section 1983 if this Court concludes—contrary to the weight of authority—that no Section-2 specific implied private right of action exists to enforce the statute. The district court was incorrect to dismiss this case for the reasons already explained, but it further erred when it

deprived plaintiffs of the opportunity to amend their complaint to invoke Section 1983.

**CONCLUSION**

This Court should reverse the judgment and remand the case to the district court for further proceedings.

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

s/ Jonathan L. Backer
ERIN H. FLYNN
JONATHAN L. BACKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3528
Jonathan.Backer@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing BRIEF OF THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6451 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared using Microsoft Office Word in a proportionally spaced typeface (Times New Roman) in 14-point font.

(3) complies with Local Rule 28A(h)(2) because the ECF submission has been scanned for viruses with the most recent version of Windows Defender (Version1.2.3412.0) and is virus-free according to that program.

s/ Jonathan L. Backer
JONATHAN L. BACKER
Attorney

Date: April 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2022, I filed the foregoing BRIEF OF THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND URGING REVERSAL with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system, which will send notice to all counsel of record by electronic mail. All participants in this case are registered CM/ECF users.

I further certify that, within five days of receipt of the notice that the brief has been filed by this Court, the foregoing brief will be sent by Federal Express, next-day mail, to the Clerk of the Court (ten copies) and to the following counsel of record (one copy) pursuant to Local Rule 28A(d):

Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400

Nicholas J. Bronni
Attorney General's Office
200 Catlett-Prien Building
323 Center Street
Little Rock, AR 72201-0000

s/ Jonathan L. Backer
JONATHAN L. BACKER
Attorney