IN THE

# United States Court of Appeals

FOR THE EIGHTH CIRCUIT

▸▸◂◂

Arkansas State Conference NAACP, *et al.*,

*Plaintiffs-Appellants*,

*v.*

Arkansas Board of Apportionment, *et al.*,

*Defendants-Appellees.*

On Appeal from the Eastern District of Arkansas
(No. 4:21-cv-01239-LPR)
District Judge: Honorable Lee P. Rudofsky

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Sophia Lin Lakin
Jonathan Topaz
Adriel I. Cepeda Derieux
Dale E. Ho
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
jtopaz@aclu.org
acepedaderieux@aclu.org
dale.ho@aclu.org

Gary Sullivan (AR Bar: 92051)
ARKANSAS CIVIL LIBERTIES
FOUNDATION UNION, INC.
904 West 2nd Street
Little Rock, AR 72201
(501) 374-2842
gary@acluarkansas.org

Ceridwen Cherry
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.
915 15th St NW
Washington, DC 20015
(202) 457-0800
ccherry@aclu.org

*Counsel continued on next page*

Neil Steiner
DECHERT LLP
Three Bryant Park
1095 Avenue of The Americas
New York, NY 10036-6797
(212) 698-3500 | (212) 698-3599
neil.steiner@dechert.com

Angela Liu
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
(312) 646-5800 | (312) 646-5858
angela.liu@dechert.com

Luke M. Reilly
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000 | (215) 994-2222
luke.reilly@dechert.com

Bryan L. Sells
THE LAW OFFICE OF
BRYAN L. SELLS, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

Matthew F. Williams
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104-4446
(415) 262-4500 | (415) 262-4555
matthew.williams@dechert.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................3

   I.  THE STATE MISREADS CONTROLLING PRECEDENT THAT
      RESOLVES THIS APPEAL. ......................................................3

     A. The State Misreads *Morse* .................................................3

     B. The State Misreads *Roberts*. ............................................8

  II. THE STATE MISCONSTRUES THE TEXT AND STRUCTURE
      OF THE VRA, WHICH EVINCE A PRIVATE RIGHT OF
      ACTION TO ENFORCE SECTION 2. ...................................10

     A. The State concedes that Section 2 confers a private right. ............11

     B. The State's claim that Congress did not intend a private
        remedy for Section 2 actions lacks merit. .....................................13

        1. A Section 2 proceeding is a "proceeding" under a
           "statute" "to enforce the voting guarantees of the
           fourteenth or fifteenth amendment." ...................................14

        2. Sections 3 and 14(e) encompass a Section 2 private
           right of action. ....................................................................19

     C. Section 12 is not exclusive; it merely authorizes the
        Attorney General to enforce Section 2. .........................................22

 III. THE STATE'S AHISTORICAL ACCOUNT OF LEGISLATIVE
      AND JUDICIAL UNDERSTANDINGS OF SECTION 2
      STRAINS CREDULITY. ......................................................24

Appellate Case: 22-1395    Page: 3    Date Filed: 07/15/2022 Entry ID: 5177691

IV. IN THE ALTERNATIVE, THE COURT SHOULD PROVIDE
AN OPPORTUNITY TO AMEND, AS SECTION 2 CONFERS
AN ENFORCEABLE INDIVIDUAL RIGHT. .......................................26

CONCLUSION ..............................................................................27

CERTIFICATE OF COMPLIANCE.........................................................29

CERTIFICATE OF SERVICE ...............................................................30

Appellate Case: 22-1395    Page: 4    Date Filed: 07/15/2022 Entry ID: 5177691

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*,
532 U.S. 275 (2001)..................................................................................... passim

*Allen v. Board of Elections*,
393 U.S. 544 (1969)..........................................................................................3

*Alpha Phi Alpha Fraternity v. Raffensperger*,
No. 1:21-cv-5337-SCJ, Order Denying Def.'s Mot. To Dismiss
(N.D. Ga. Jan. 28, 2022)...................................................................................4

*Animal Legal Defense Fund v. Reynolds*,
8 F.4th 781 (8th Cir. 2021) ...............................................................................5

*Baker v. Carr*,
369 U.S. 186 (1962)........................................................................................12

*Barnhart v. Thomas*,
540 U.S. 20 (2003)..........................................................................................14

*Blessing v. Freestone*,
520 U.S. 329 (1997)........................................................................................24

*Brnovich v. Democratic National Committee*,
141 S. Ct. 2321 (2021)...................................................................................17

*Bush v. Vera*,
517 U.S. 952 ...................................................................................................15

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)........................................................................................22

*Chisom v. Roemer*,
501 U.S. 380 (1991)........................................................................................11

*City of Mobile v. Bolden*,
446 U.S. 55 (1980)..........................................................................................24

iii

*Colón-Marrero v. Valez,*
  813 F.3d 1 (1st Cir. 2016).............................................................23

*Fitzgerald v. Barnstable School Committee,*
  555 U.S. 246 (2009)....................................................................24

*Foman v. Davis,*
  371 U.S. 178 (1962)....................................................................27

*Ford v. Strange,*
  580 F. App'x 701 (11th Cir. 2014)................................................4

*Freeman v. Fahey,*
  374 F.3d 663 (8th Cir. 2004) ......................................................22

*Georgia State Conference of NAACP v. State,*
  269 F. Supp. 3d 1266 (N.D. Ga. 2017).........................................4

*Gill v. Whitford,*
  138 S. Ct. 1916 (2018)................................................................12

*Greater Birmingham Ministries v. Alabama,*
  No. 15-cv-02193, 2017 WL 782776 (N.D. Ala. Mar. 1, 2017).........4

*In re Polaroid Corporation,*
  611 F.3d 438 (8th Cir. 2010) ........................................................8

*In re Pre-Filled Propane Tank Antitrust Litigation,*
  860 F.3d 1059 (8th Cir. 2017) (en banc) .......................................7

*Jeffers v. Clinton,*
  740 F. Supp. 585 (E.D. Ark. 1990)..............................................18

*Kimble v. Marvel Entertainment, LLC,*
  576 U.S. 446 (2015)....................................................................25

*LaRouche v. Fowler,*
  152 F.3d 974 (D.C. Cir. 1998)......................................................5

Appellate Case: 22-1395    Page: 6    Date Filed: 07/15/2022 Entry ID: 5177691

*Leach v. Medicom*,
373 F.3d 895 (8th Cir. 2004) ..............................................................22

*LULAC v. Abbott*,
No. 21-cv-1006, 2022 WL 1631301 (W.D. Tex. May 23, 2022).....................12

*LULAC v. Perry*,
548 U.S. 399 (2006)...........................................................................12

*Manning v. Caldwell for City of Roanoke*,
930 F.3d 264 (4th Cir. 2019) ...............................................................7

*Marks v. United States*,
430 U.S. 188 (1977)..........................................................................4, 5

*McIndoo v. Burnett*,
494 F.2d 1311 (8th Cir. 1974) .............................................................27

*Merrill v. Milligan*,
142 S. Ct. 879 (Mem.) .......................................................................2

*Michigan Welfare Rights Organization v. Trump*,
No. 20-3388, 2022 WL 990704 (D.D.C. Apr. 1, 2022) .......................................4

*Milligan v. Merrill*,
No. 2:21-cv-1291-AMM, 2022 WL 265001 (N.D. Ala. Jan. 24, 2022) .... 2, 3, 4

*Morse v. Republican Party of Virginia*,
517 U.S. 186 (1996)..........................................................................3, 5

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*,
460 U.S. 1 (1983)..............................................................................6

*Midwest Foster Care & Adoption Ass'n v. Kincade*,
712 F.3d 1190 (8th Cir. 2013) .............................................................13

*Nevada Department of Human Resources v. Hibbs*,
538 U.S. 721 (2003)...................................................................... 15, 20

v

*New Doe Child #1 v. United States*,
   901 F.3d 1015 (8th Cir. 2018) ...............................................................7

*North Carolina State Conference of NAACP v. McCrory*,
   831 F.3d 204 (4th Cir. 2016) ...........................................................19

*Osher v. City of St. Louis*,
   903 F.3d 698 (8th Cir. 2018) ......................................................9, 10

*Roberts v. Wamser*,
   883 F.2d 617 (8th Cir. 1989) ................................................ 8, 9, 23

*Robinson v. Ardoin*,
   No. 22-214, 2022 WL 2012389 (M.D. La. June 6, 2022) ...................................4

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
   490 U.S. 477 (1989)......................................................................10

*Rogers v. Lodge*,
   458 U.S. 613 (1982)......................................................................17

*Schwab v. Crosby*,
   451 F.3d 1308 (11th Cir. 2006) .......................................................7

*Schwier v. Cox*,
   340 F.3d 1284 (11th Cir. 2003) .....................................................23

*Shaw v. Hunt*,
   517 U.S. 899 (1996)......................................................................12

*Sixth District of the African Methodist Episcopal Church v. Kemp*,
   — F.Supp.3d —, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021).........................19

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*,
   552 U.S. 148 (2008).................................................................. 21, 22

*Thornburg v. Gingles*,
   478 U.S. 30 (1986).......................................................................17

vi

Appellate Case: 22-1395    Page: 8    Date Filed: 07/15/2022 Entry ID: 5177691

*Turtle Mountain Band of Chippewa Indians v. Jaeger*,
  No. 3:22-cv-22-PDW-ARS, 2022 WL 2528256
  (D.N.D. July 7, 2022) ............................................................ 11, 22, 26

*Tyler v. Bethlehem Steel Corporation*,
  958 F.2d 1176 (2d Cir. 1992) .................................................6

*United States v. Bailey*,
  571 F.3d 791 (8th Cir. 2009) .................................................6

*United States v. Duvall*,
  740 F.3d 604 (D.C. Cir. 2013) ..............................................6, 7

*United States v. Harris*,
  838 F.3d 98 (2d Cir. 2016) ....................................................7

*United States v. Pulsifer*,
  — F.4th —, 2022 WL 2658897 (8th Cir. July 11, 2022) ................17

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) .................................................19

*West River Electric Ass'n, Inc. v. Black Hills Power & Light Co.*,
  918 F.2d 713 (8th Cir. 1990) .................................................8

*Wisconsin Right to Life, Inc. v. Barland*,
  751 F.3d 804 (7th Cir. 2014) .................................................7

**Statutes**

42 U.S.C. § 1983 ...................................................................... 13, 26

52 U.S.C. § 10301 .........................................................................23

52 U.S.C. § 10301(a) ............................................................. 10, 11, 12

52 U.S.C. § 10302 ................................................................... 15, 16

52 U.S.C. § 10302(a) ............................................................... 13, 14

vii

52 U.S.C. § 10303 ...................................................................................23

52 U.S.C. § 10306 ...................................................................................23

52 U.S.C. § 10308(d) ..............................................................................23

**Legislative Materials**

H.R. Rep. No. 97-227 (1981) ...................................................................26

S. Rep. No. 97-417 (1982) .......................................................................26

Appellate Case: 22-1395    Page: 10    Date Filed: 07/15/2022 Entry ID: 5177691

# INTRODUCTION

The State does not dispute the basic *Sandoval* elements showing there is an implied right of action to enforce Section 2 of the Voting Rights Act ("VRA"). It concedes that Section 2's plain text "appears to describe an individual right." And it does not seriously contest that the purpose of Section 2's results standard is to enforce the Fifteenth Amendment's voting guarantees. As such, the private remedies that Section 3 and Section 14 of the VRA provide for "a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment" include actions under Section 2. Congress' intent to permit private parties to enforce Section 2 is unmistakable—the authority recognizing that reality is overwhelming.

That is why, other than the district court, every court to consider the issue has followed the Supreme Court's lead in *Morse v. Republican Party of Virginia* to conclude that Section 2 is privately enforceable. It is why this Court in *Roberts v. Wamser* held that "persons whose voting rights have been denied or impaired" can bring suit under Section 2. It is why federal courts nationwide have heard and decided hundreds of Section 2 cases brought by private plaintiffs. And it is why Congress has stated repeatedly that it "clearly intended" "the existence of [a] private right of action under Section 2."

1

The State argues that all of these federal courts, and Congress itself, have gotten it wrong. If the State were correct, hundreds of federal courts—including the Supreme Court at least eleven times—failed to recognize that they lacked jurisdiction to hear any of these cases.[1] If the State were correct, when Congress amended Section 2 in 1982 to incorporate the results standard to make it *easier* for private plaintiffs to enforce their rights under Section 2, it simultaneously (and silently) made it impossible for them to enforce those rights. And if the State were correct, Congress did so while saying the exact opposite, and then kept quiet for four decades as federal courts heard hundreds of private plaintiffs' Section 2 cases.

The statute's text does not support the State's attempt to break with Congress, the Supreme Court, this Court, and every other court to consider the issue. Private plaintiffs may enforce their rights under Section 2, as they have for decades. The Court should reverse.

---

[1] *See* Opening Br. 7. Notably, a Section 2 case brought by private plaintiffs is on the Supreme Court's docket next term. *See Milligan v. Merrill*, No. 2:21-cv-1291-AMM, 2022 WL 265001 (N.D. Ala. Jan. 24, 2022), *cert. before judgment granted*, 142 S. Ct. 879 (Mem.). Its question presented does not include the issue of plaintiffs' jurisdiction to sue under the statute. *Merrill v. Milligan*, 142 S. Ct. 879 (Mem.).

Appellate Case: 22-1395    Page: 12    Date Filed: 07/15/2022 Entry ID: 5177691

# ARGUMENT

## I. THE STATE MISREADS CONTROLLING PRECEDENT THAT RESOLVES THIS APPEAL.

### A. The State Misreads *Morse*.

The State does not dispute that five Justices in *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), agreed there is a private right of action to enforce Section 2. *See* State Br. 28. Nor does the State deny that, in holding that there is a private right of action under Section 10 of the VRA, Justice Stevens' lead opinion "reason[ed] . . . from the presumed actionability of Section 2 to the actionability of Section 10." *Id.* Still, the State insists that the Section 2 private right of action Justice Breyer's concurring opinion recognized was mere "dicta." *Id.* at 29.

That is wrong. Justice Breyer explicitly "agree[d] with Justice Stevens" because "the [private right of action] rationale of *Allen* [*v. Bd. of Elect.*, 393 U.S. 544 (1969)] . . . applies with similar force not only to § 2 but also to § 10." *Morse*, 517 U.S. at 240 (Breyer, J., concurring). Thus, "the understanding that Section Two provides a private right of action was necessary to reach the judgment" in *Morse*, *Milligan*, 2022 WL 265001, at *79—it was integral to the reasoning of both Justice Stevens' lead opinion (for two Justices) and Justice Breyer's concurrence (for three). It is therefore part of the holding. *See id*.

That holding controls here. It is why, until now, every lower court to consider the question has correctly concluded that *Morse* is binding precedent that

3

Section 2 contains a private right of action.[2]

The State also wrongly suggests that *Morse* "lacks a *Marks* holding" and reasons nothing other than its "specific result" follows. State Br. 29–30. But *Marks* is inapplicable here because *Morse has* a majority holding with respect to Section 2.

*Marks v. United States* applies when "no single rationale explaining the result enjoys the assent of five Justices." 430 U.S. 188, 193 (1977). It instructs that in such a case a Supreme Court decision's precedential force boils down to its "narrowest" application. *Id.* But in *Morse*, *both* lead and concurring opinions reasoned from the premise that Section 2 is enforceable by private action. They

---

[2] *See Ford v. Strange*, 580 F. App'x 701, 705 n.6 (11th Cir. 2014) (citing *Morse* for proposition that "[a] majority of the Supreme Court has indicated that Section 2 . . . contains an implied private right of action"); *Robinson v. Ardoin*, No. 22-214, 2022 WL 2012389, at *33–34 (M.D. La. June 6, 2022), *cert. granted before judgment*, 2022 WL 2312680 (2022) (rejecting district court's reasoning here, noting "*Morse* has not been overruled, and this Court will apply Supreme Court precedent"); *Mich. Welfare Rights Org. v. Trump*, No. 20-3388, 2022 WL 990704, at *11 (D.D.C. Apr. 1, 2022) (noting Court "recognized a private right of action under § 2" in *Morse*); *Ga. State Conf. of NAACP v. State*, 269 F. Supp. 3d 1266, 1274–75 (N.D. Ga. 2017) (citing *Morse* for proposition that "Section 2 contains an implied private right of action"); *Greater Birmingham Ministries v. Alabama*, No. 15-cv-02193, 2017 WL 782776, at *12 (N.D. Ala. Mar. 1, 2017) (similar); *see also Alpha Phi Alpha Fraternity v. Raffensperger*, No. 1:21-cv-5337-SCJ, Order Denying Def.'s Mot. To Dismiss, slip op. at 33 (N.D. Ga. Jan. 28, 2022) ("deriv[ing] guidance" from *Morse* in finding Section 2 private action); *Milligan*, 2022 WL 265001, at *79 (*Morse* "strongly suggests that Section Two provides a private right of action").

4

analyzed from there to conclude that a similar right applies under Section 10. *See Morse*, 517 U.S. at 232 ("the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965" (citations omitted)); *id.* at 240 (Breyer, J., concurring) ("[C]ongress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5."). So, in *Morse*, the notion that Section 2 is privately enforceable was a "rationale" that "enjoy[ed] the assent of five Justices." *Marks*, 430 U.S. at 193.

The State characterizes *Morse* as "fractured," but the lead and concurring opinions disagreed on only a narrow question that had nothing to do with Section 2: whether, and to what extent, VRA Section 5 applied to political parties. *See LaRouche v. Fowler*, 152 F.3d 974, 991 (D.C. Cir. 1998) (discussing separate "question in *Morse* [] whether [political party's] actions were those of a 'state or political subdivision' under the [VRA]").[3] That was the divergence between the two opinions in the *Morse* majority. Thus, *Morse* is nothing like the case the State relies on, *Animal Legal Defense Fund v. Reynolds*, 8 F.4th 781 (8th Cir. 2021),

---

[3] Specifically, five Justices agreed that the Virginia Republican Party's decision to charge a fee to participate in a nomination convention was subject to Section 5 preclearance. Justice Breyer wrote separately, positing it was unnecessary for the Court to expound a rule on "when party activities are, in effect, substitutes for nominating primaries" because the case it had to decide "resemble[d] a primary about as closely as one could imagine." *Morse*, 517 U.S. at 238 (Breyer, J., concurring).

Appellate Case: 22-1395    Page: 15    Date Filed: 07/15/2022 Entry ID: 5177691

where the plurality and concurrence would have applied differing levels of scrutiny. Here, by contrast, the lead and concurring opinions employed largely the same reasoning, and *agreed* on the question presented here—that there is a private right of action under Section 2.

Even if *Marks* applied, the reasoning of *Morse*'s lead and concurring opinions would control. Lower courts glean binding reasoning from "splintered decision[s]," which can be "as authoritative" to them "as a nine-Justice opinion." *United States v. Duvall*, 740 F.3d 604, 611 (D.C. Cir. 2013) (quotations omitted) (Kavanaugh, J., concurring). In practice, courts faced with fragmented Supreme Court rulings—including the Supreme Court and this Court—have sought "common ground shared by five or more justices." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1182 (2d Cir. 1992); *see, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 (1983) ("[T]he Court of Appeals correctly recognized that the four dissenting Justices and Justice Blackmun formed a majority to require application of the *Colorado River* test."); *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009) (adopting approach applying rule embraced by a majority of the Justices by combining a dissent with a concurrence). As then-Judge Kavanaugh explained, interpreting "splintered decisions" lacking a "narrowest" opinion is "easy": lower courts should "run the facts and circumstances of the current case through the tests articulated in the [] various

6

opinions in the binding case and adopt the result that a majority . . . would have reached." *Duvall*, 740 F.3d at 611 (Kavanaugh, J., concurring). And on the face of the two *Morse* opinions in the majority, five Justices would clearly hold that Section 2 is enforceable by private action.

That would still be true if, as the State suggests, the relevant portions of *Morse* are "dicta." Supreme Court dicta merit great "deference and respect" as this Court (and every other Circuit[4]) has recognized. *New Doe Child #1 v. United States*, 901 F.3d 1015, 1019 n.4 (8th Cir. 2018) (quotations omitted). So, either way, *Morse*'s statements about Section 2 merit much more deference than the district court afforded them.[5] *Morse* demands reversal.

---

[4] *See, e.g.*, *United States v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016) ("[W]e are obligated 'to accord great deference to Supreme Court dicta . . . . '"); *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836 (7th Cir. 2014) ("[T]he Supreme Court's dicta must be respected."); *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("[T]here is dicta and then there is dicta, and then there is Supreme Court dicta.").

[5] This is particularly true here. *Morse*'s statements reflect an unbroken line of federal case law until this case, and Supreme Court dicta has greater persuasive weight when it (1) is "consistent" with "longstanding . . . precedent," *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc); and (2) ensures "consistent and uniform development and application of the law," *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 282 (4th Cir. 2019) (en banc).

7

**B. The State Misreads *Roberts*.**

This Court's decision in *Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989), likewise demands reversal here; yet the State dedicates just two paragraphs to it. *See* State Br. 31–32. The State's cursory arguments fail for two reasons.

*First*, the State wrongly claims that the relevant language in *Roberts* is not a holding. *Id.* at 31. But this Court was clear: "*we hold*" that "persons whose voting rights have been denied or impaired," but not political candidates, constitute "aggrieved persons" who can sue under Section 2. 883 F.2d at 624 (emphasis added). Courts cannot "ignore[] . . . the plain language of" binding authority. *W. River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 718 n.7 (8th Cir. 1990); *see also In re Polaroid Corp.*, 611 F.3d 438, 440 (8th Cir. 2010) (similar). Nor, as the State suggests, did *Roberts* "merely assume[]" that private plaintiffs could sue under Section 2, State Br. 32; rather, it explicitly determined that they are "aggrieved persons" with "standing to sue" under Section 2, 883 F.2d at 624.

*Roberts*' explicit holding was also not "unnecessary to the resolution of the case." State Br. 31. *Roberts*' central question was discerning who were "aggrieved persons" under Section 3. *See* 883 F.2d at 621. This Court determined who wasn't an "aggrieved person" by first saying who was. That is, *Roberts* reached its holding by comparing unsuccessful candidates (who were not

8

aggrieved persons) with private individual voters (who were). And this Court concluded that "[t]he possible divergence of interests between a candidate seeking office and a citizen attempting to protect his right to vote underscore[d] the dubious nature of Roberts's claim to standing under the [VRA]." *Id*. at 622. Indeed, on multiple occasions, *Roberts* refers to "aggrieved persons" under Section 3 as "aggrieved *voter*[*s*]," who, unlike candidates, have a private right of action because they are "not concerned about getting elected, but with [their] right, and the right of others similarly situated, to vote." *Id.* This Court did not assume; it affirmatively held that an "aggrieved voter" "attempting to protect his right to vote" can enforce that right under Section 2.

*Second*, *Roberts* has not "been superseded by intervening precedent," State Br. 32. There is no conflict between *Roberts* and *Alexander v. Sandoval*, 532 U.S. 275 (2001), or *Osher v. City of St. Louis*, 903 F.3d 698 (8th Cir. 2018). In *Osher*, this Court repudiated its own precedent because it failed to "proper[ly] focus . . . on congressional intent." 903 F.3d at 702. But *Roberts*' holding chiefly rests on congressional intent as gleaned from the statutory text. *See, e.g.*, 883 F.2d at 623 ("We cannot believe that Congress intended such a result. . . . [W]e cannot find anything in the language of the [VRA] that makes manifest a congressional intent to bring about such a counterintuitive result."); *id.* at 621 ("[W]e are unconvinced that Congress intended" the definition of "aggrieved persons" to

include "unsuccessful candidate[s]").  *Roberts* is entirely consistent with *Osher* and controlling implied private-right-of-action jurisprudence.

Further, neither *Sandoval* nor *Osher* mention *Roberts*—nor have anything to do with the VRA.  To be overruled, precedent must be specifically rejected.  Unless the Supreme Court or this Court overturns *Roberts*, it remains binding law.  *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (where a court of appeals decision "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls").

The State cannot evade this Court's controlling precedent.  The district court's departure from *Roberts* is a straightforward basis for reversal.

## II. THE STATE MISCONSTRUES THE TEXT AND STRUCTURE OF THE VRA, WHICH EVINCE A PRIVATE RIGHT OF ACTION TO ENFORCE SECTION 2.

Even if *Morse* and *Roberts* didn't resolve this appeal (which they do), Section 2 meets the two-part *Sandoval* test.  *See* Opening Br. 27–43.  It unambiguously confers a private "right" to "any citizen of the United States" to vote free from racial discrimination.  52 U.S.C. § 10301(a).  And Sections 3 and 14(e) demonstrate Congress' intent to allow private actors *and* the Attorney General to enforce that right.

10

**A. The State concedes that Section 2 confers a private right.**

The State concedes that the text of Section 2, which prohibits voting practices that "result[] in a denial or abridgement of the right of any citizen . . . to vote on account of race or color," 52 U.S.C. § 10301(a), "appears to describe an individual right." State Br. 19; *see also id.* (Section 2's language "confers rights"). That resolves *Sandoval*'s first prong, because Section 2's reference to the "right of any citizen . . . to vote" is the sort of "rights-creating language" that satisfies *Sandoval*. *See* Opening Br. 28–29; *see also, e.g.*, *Turtle Mountain Band of Chippewa Indians v. Jaeger* ("*Turtle Mountain Band*"), No. 3:22-cv-22-PDW-ARS, 2022 WL 2528256, at *5 (D.N.D. July 7, 2022) (noting "[i]t is difficult to imagine more explicit or clear rights creating language" than exists in Section 2). This is the *only* relevant inquiry to *Sandoval*'s first prong. *See* 532 U.S. at 289.

According to the State, however, the paradigmatic individual right that subsection (a) defines is somehow negated by subsection (b) of the statute, which, the State claims, establishes a "group right." State Br. 19–20. Not so. Subsection (b) merely establishes how a plaintiff may prove a substantive violation of an individual's right to vote free from racial discrimination set forth in subsection (a). *See Chisom v. Roemer*, 501 U.S. 380, 395 (1991) ("Section (a) adopts a results test . . . Section (b) provides guidance about how the results test is to be applied."). It is unsurprising that proving a violation of the right to vote free from racial

11

discrimination would entail showing that a challenged voting rule burdens "members" of a particular racial group.

Moreover, the Supreme Court has been clear: Section 2 protects an *individual* right. In like circumstances—a Section 2 vote-dilution challenge to a redistricting plan—the Court concluded that "the right to an undiluted vote does not belong to the 'minority as a group,' but [] to 'its individual members.'" *LULAC v. Perry*, 548 U.S. 399, 437 (2006); *see also Shaw v. Hunt*, 517 U.S. 899, 917 (1996) ("a misconception of the vote-dilution claim" is that the "right to an undiluted vote . . . belongs to the minority as a group and not to its individual members") (citing "right of any citizen" language in 52 U.S.C. § 10301(a)).

The State tries to support its group-rights construct, saying "it doesn't matter under Section 2 [whether] an individual plaintiff" can elect her preferred candidate, as long as a majority of the minority group in question can. State Br. 22. But not every member of a disadvantaged group can bring a vote dilution claim; only "voters who allege facts showing disadvantage to themselves as *individuals* have standing to sue." *Gill v. Whitford*, 138 S. Ct. 1916, 1920 (2018) (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962) (emphasis added)). Thus, courts have held that "[a] person has standing to bring [a] . . . Section 2 vote-dilution claim[] only where she resides, votes, and personally suffers such injuries." *LULAC v. Abbott*, No. 21-cv-1006, 2022 WL 1631301, at *7 (W.D. Tex. May 23, 2022). Indeed, the

12

State insisted below that only individuals who alleged that their individual voting rights were diluted have standing under Section 2, as opposed to all Black Arkansans. *See* R. Doc. 77, at 2, 4.[6]

No court has ever found that Section 2 does not confer an individual right—not even the court below. The State concedes that the statute contains rights-creating language, and its attempts to limit that concession's result fail.

### B. The State's claim that Congress did not intend a private remedy for Section 2 actions lacks merit.

The State concedes that Sections 3 and 14(e) contemplate that private individuals can sue to "enforce the voting guarantees of the fourteenth or fifteenth amendments." 52 U.S.C. § 10302(a); State Br. 45. And it does not dispute that Congress, under its power to enforce the Fifteenth Amendment, amended Section 2 to prohibit voting laws with discriminatory results to secure the Amendment's guarantee to be free from racial discrimination in voting. Accordingly, the private remedies available in Sections 3 and 14 are available for Section 2 actions because a proceeding to enforce Section 2 is a "proceeding" under "[a] statute to enforce

---

[6] The State is also confused in its discussion (at 21–22) about "substantial compliance regime[s]." It cherry-picks language from a separate inquiry—whether a private plaintiff may sue under 42 U.S.C. § 1983—about whether a statute has an "aggregate focus." *See Mw. Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1200–01 (8th Cir. 2013). In this analysis, whether a statute contains rights-creating language, and whether a statute has an aggregate focus, are separate inquiries. *See id.* at 1197, 1200. By contrast, *Sandoval*'s first prong asks only if a statute contains rights-creating language or focuses on the regulated entities.

13

the voting guarantees of the fourteenth or fifteenth amendment." Congress' intent to afford Section 2 a private remedy—the core inquiry for *Sandoval*'s second prong—is unmistakable.

### 1. A Section 2 proceeding is a "proceeding" under a "statute" "to enforce the voting guarantees of the fourteenth or fifteenth amendment."

The State insists that Sections 3 and 14 are inapplicable to Section 2 actions because, in their view, those do not "enforce the voting guarantees of the fourteenth or fifteenth amendment." The State's arguments lack merit.

*First*, the State's argument that Section 3 does not apply to Section 2 actions (State Br. 37), fails as a textual matter. Section 3 contemplates private suits for "proceeding[s] under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a). "[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Applying that rule, the limiting phrase "to enforce the voting guarantees of the fourteenth or fifteenth amendment" modifies "any statute," not "proceeding." Moreover, the phrase "any statute" is not set off by commas. Common grammatical rules thus indicate that Congress intentionally tied the phrase "to enforce the voting guarantees" to the last antecedent, "any statute." Section 3's text readily encompasses not only actions to enforce the constitutional voting guarantees

14

directly, but actions under "any statute" seeking to enforce those constitutional guarantees.

*Second*, irrespective of whether the State's textual construction is correct, a Section 2 action *is* an action "to enforce" the Reconstruction Amendments' guarantees. The State's distinction between suits to enforce Section 2 and suits to enforce the Reconstruction Amendments' voting guarantees fundamentally misunderstands the nature of Section 2 actions. The purpose and function of Section 2's prophylactic discriminatory results standard is "to remedy and [] deter violation[s] of rights guaranteed thereunder," *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727 (2003). *See* Opening Br. 36–37. "The results test of § 2 is an important part of the apparatus chosen by Congress to . . . fulfill the guarantee of the Constitution with respect to equality in voting. Congress considered the [results] test necessary and appropriate to ensure full protection of the Fourteenth and Fifteenth Amendments rights." *Bush v. Vera*, 517 U.S. 952, 992 (O'Connor, J., concurring) (cleaned up). Because Section 2's purpose is to enforce the Fifteenth Amendment, and because it was enacted pursuant to Congress' power to enforce the Fifteenth Amendment, a Section 2 proceeding is necessarily a "proceeding" under a "statute" that seeks "to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302.

15

But by analogizing to facts in *Sandoval*, the State argues that its distinction between actions enforcing Section 2 and ones enforcing the constitutional guarantees resolves the private-right-of-action issue here. State Br. 38–39. The analogy goes nowhere. In *Sandoval*, the Court concluded that the challenged Department of Justice ("DOJ") disparate-impact regulation at issue could not piggyback on the existing private right of action for intentional discrimination claims under Title VI. The Court then determined that there was no separate private right of action to enforce the regulation. *Sandoval*, 532 U.S. at 286. But while "rights-creating language . . . is completely absent from § 602," the statutory provision authorizing DOJ to promulgate the relevant regulation, *id.* at 288, Section 2 contains paradigmatic rights-creating language, *see supra.*

Meanwhile, Section 3 of the VRA explicitly contemplates remedies for proceedings instituted by private individuals under "any *statute* to enforce the voting guarantees" of the Reconstruction Amendments. 52 U.S.C. § 10302 (emphasis added). Such statutes plainly include Section 2. *See supra*. But in *Sandoval*, there were no corresponding statutory references to remedies for proceedings by private individuals under administratively-promulgated disparate impact *regulations*. 532 U.S. at 291 ("Language in a regulation . . . may not create a right that Congress has not.").

16

Appellate Case: 22-1395     Page: 26     Date Filed: 07/15/2022 Entry ID: 5177691

Moreover, Section 2's results prong is not a "freewheeling disparate-impact regime." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2341–42 (2021). Rather, Congress adopted—and the Supreme Court affirmed, *see Thornburg v. Gingles*, 478 U.S. 30 (1986)—a results standard that, unlike a bare disparate impact standard, drew from longstanding case law regarding circumstances "relevant to the issue of intentional discrimination," *Rogers v. Lodge*, 458 U.S. 613, 623–24 (1982). *See* Opening Br. 38–39.

*Third*, the State asserts that, because certain Section 3 remedies are available only upon a showing of a constitutional violation, Section 3 must apply only to constitutional suits. State Br. 39. But Section 3 remedies are not so limited. Indeed, if Section 3 applied only to actions raising constitutional violations, the text in both 10302(a) and (c), which specifies that certain remedies are available only if a court finds "violations of the fourteenth or fifteenth amendment," would be surplusage. The word "violations" alone would have sufficed. *See United States v. Pulsifer*, — F.4th —, 2022 WL 2658897, at *3 (8th Cir. July 11, 2022) ("It is a cardinal principle of statutory construction that we must give effect . . . to every clause and word of a statute" (internal quotation marks omitted)).

With respect to Section 3(c), it is true that there must be a constitutional violation for so-called "bail-in" preclearance relief to be proper. But the requisite

17

constitutional violation need not be the basis for the lawsuit seeking Section 3(c) relief.

*Jeffers v. Clinton*, another Section 2 challenge to an Arkansas apportionment plan that the State ignores, is instructive. There, the court ordered a preclearance remedy under Section 3(c) even though the challenged plan violated Section 2's results standard, *not* the Constitution. 740 F. Supp. 585, 587, 601 (E.D. Ark. 1990). As the court observed, while Section 3(c) relief requires that constitutional violations have occurred in the jurisdiction, the text of the provision "is not limited at all" to a claim that the challenged election practice itself violates the Constitution. *Id.* at 592. Thus, Section 3(c) remedies are available even in a Section 2 results case, if in the course of the challenge, *other* constitutional violations in the jurisdiction have been demonstrated sufficient to justify Section 3(c) relief. *Id.*

*Finally*, the State's proposed distinction between actions enforcing the Reconstruction Amendments' voting guarantees and actions enforcing Section 2's results standard proves too much. Even accepting this distinction, private plaintiffs could still bring *some* Section 2 suits because Section 2 has both an intentional

18

discrimination prong (which is coextensive with the Fifteenth Amendment) and a

prophylactic discriminatory results prong.[7]

### 2. Sections 3 and 14(e) encompass a Section 2 private right of action.

Next, the State argues that even if Sections 3 and 14(e) didn't apply solely to

suits alleging constitutional violations, that does not mean they demonstrate an

intent to create a private action for Section 2.  State Br. 43–44.  Instead, it

contends, references to actions "to enforce the voting guarantees of the fourteenth

of fifteenth amendment" demonstrate only that there are *some* statutory private

actions to enforce voting rights.[8]  *Id.* at 45–46.  "[A]t most," the State claims, this

language could encompass the Section 5 private right of action that the Supreme

---

[7] Insofar as the State suggests that in incorporating Section 2's results standard, Congress eliminated its application to intentional discrimination claims, that is wrong.  Federal courts have consistently entertained and decided Section 2 intentional discrimination claims in the decades since.  *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016); *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016), *cert. denied* 137 S. Ct. 1399 (2017)); *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, — F.Supp.3d —, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021).

[8] The State suggests (at 45–46) that reading Sections 3 and 14(e) as contemplating a Section 2 private action would mean *all* voting rights statutes are privately enforceable.  But those sections display Congress' intent to make privately enforceable only those statutes that (1) unambiguously confer a private right; and (2) enforce the constitutional voting guarantees.  Section 2 is simply one statute that fits the bill.

19

Court recognized in *Allen* prior to 1975, when Congress amended the VRA to add "aggrieved persons" to Section 3 and added Section 14(e). *Id.* at 46–48.

But, nothing in Sections 3 and 14's text suggests such a cramped reading. Instead, the text provides broadly for relief for actions under statutes designed for a particular purpose, namely "to enforce the voting guarantees of the fourteenth or fifteenth amendment." Section 2 is one such statute. As for limiting Section 3's reach to Section 5, it is irreconcilable to read Section 3's reference to "any statute" "to enforce the voting guarantees of the fourteenth or fifteenth amendment" to apply to one VRA provision with a prophylactic discriminatory effects prong (Section 5), *see Nev. Dep't of Hum. Res*, 538 U.S. at 737–38, but not to Section 2, which was enacted under the same enforcement powers for the identical purpose of securing the Reconstruction Amendment's voting guarantees.[9] Yet the State suggests that the Court do just that: have the same words have different meanings

---

[9] For similar reasons, the State is incorrect (at 40) that its reading is not in tension with *Morse*, which found that Section 3 evinces Congress' intent to permit private suits under Section 10. While the State is correct that the Fourteenth Amendment prohibits poll taxes, it formally does so only in state elections. In this way, Section 10—which prohibits poll taxes in *federal* elections—and the Fourteenth Amendment are not perfectly co-extensive. Congress could not have intended the exact same language in Section 3 to encompass one VRA provision that is not perfectly co-extensive with the Reconstruction Amendments (Section 10), but not another (Section 2).

Appellate Case: 22-1395    Page: 30    Date Filed: 07/15/2022 Entry ID: 5177691

when referring to Section 5 than when referring to any other provision of the VRA. Congress could not have meant such an illogical result.

The State nevertheless claims that its atextual interpretation is consistent with how the Supreme Court supposedly treated a purportedly similar provision in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). State Br. 46–47. In *Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 156 (2008), the Court declined to extend a previously implied right of action under § 10(b) of the Securities and Exchange Act ("Exchange Act") to aiding and abetting liability. In the State's telling, *Stoneridge* is analogous because the Court declined to find a private right of action for aiding and abetting liability despite a reference in the PSLRA to "any private action arising under [the Exchange Act],"[10] a phrase they claim is more indicative of an intent to create a private remedy than Sections 3 and 14's reference to proceedings "to enforce the voting guarantees of the fourteenth or fifteenth amendment." State Br. 47.

But *Stoneridge* is inapposite. Critically, the State neglects to point out that by the time it decided *Stoneridge*, the Supreme Court had already conclusively resolved the private right of action issue in the case in the negative. *See*

---

[10] The State wrongly suggests (at 47) that *Stoneridge* rejected an argument that the PSLRA's reference to "any private action" under the Exchange Act gave rise to an implied right of action for aiding and abetting liability. Such an argument was not considered by the Court. *See Stoneridge*, 552 U.S. at 165.

21

*Stoneridge*, 552 U.S. at 156–57 (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994)). In *Stoneridge*, the Court simply declined to "extend[] [§10(b)'s right of action] beyond its present boundaries." *Id.* at 165. Thus, the Court had already held the private right of action did not apply to the precise scenario before it. In stark contrast here, the Supreme Court in *Morse* has already held that the private right of action *does*.

### C. Section 12 is not exclusive; it merely authorizes the Attorney General to enforce Section 2.

The State erroneously argues that Section 12(d), which authorizes the Attorney General to bring suit, provides the exclusive remedy for Section 2 violations. State Br. 25. But as the State's own authority makes clear the existence (or not) of an express statutory right of action is not "conclusive" (at 25), but just one factor, of many, that courts should consider when conducting *Sandoval*'s fact-specific analysis. *See* 532 U.S. at 290 (observing that sometimes, an express "method of enforcing a substantive rule *suggests* that Congress intended to preclude others" (emphasis added)); *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004) (citing *Sandoval,* 532 U.S. at 286); *Leach v. Medicom*, 373 F.3d 895, 896 (8th Cir. 2004) (same).

Here, this "Court cannot conclude that private enforcement of Section 2 is incompatible with the enforcement scheme in Section 12." *Turtle Mountain Band*, 2022 WL 2528256, at *6. The State ignores that Congress and the Supreme Court

22

have accepted that the Attorney General's enforcement power under Section 12(d) *supplements*, not supplants, private VRA enforcement. For example, *Morse* held that Section 10 contained an implied private right of action, even though Section 12(d) explicitly gave the Attorney General the *exact same* enforcement power over Section 10 as it does over Section 2. *See* 52 U.S.C. § 10308(d) (giving Attorney General same enforcement power over Section 2 (§ 10301) as it does over Section 10 (§ 10306)). The same is true of *Allen*, which found an implied right of action under Section 5, despite Section 12(d)'s grant of enforcement power to the Attorney General (§ 10303).[11] And when this Court held in *Roberts* that "persons whose voting rights have been denied or impaired" had "standing to sue" under Section 2, it did so with Section 12(d) already on the books. 883 F.3d at 624. Yet Congress has never amended the VRA to clarify that the Court got it wrong in failing to recognize that, as the State claims, the Attorney General has exclusive enforcement power over Sections 2, 5, or 10—not in 1975 after *Allen*, nor in 1982 when Congress added the results standard, nor in 2006 when it last amended the VRA.

---

[11] Post-*Sandoval*, other Circuits have concluded similarly in other contexts. *See, e.g.*, *Colón-Marrero v. Valez*, 813 F.3d 1, 21–22 (1st Cir. 2016) (implying private right to enforce statute despite express provision authorizing Attorney General suits); *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003) (same).

23

This dovetails with the Supreme Court's general private-right-of-action jurisprudence. As the Court has acknowledged in a variety of contexts, private enforcement of a statute cannot be defeated simply because alternative mechanisms to protect the plaintiff's interests exist. *See Blessing v. Freestone*, 520 U.S. 329, 347–48 (1997) (Social Security Act enforcement scheme granting Secretary of Health and Human Services "limited powers to audit and cut federal funding" did not preclude private enforcement). The Court, for example, has acknowledged that Title IX contains an "express enforcement mechanism," *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009), which constitutes an "express provision of one method of enforcing a substantive rule," *Sandoval*, 532 U.S. at 290. Despite this express enforcement mechanism, the Court—in *Sandoval* and afterward—has continued to find that Title IX contains an implied private right of action.

## III. THE STATE'S AHISTORICAL ACCOUNT OF LEGISLATIVE AND JUDICIAL UNDERSTANDINGS OF SECTION 2 STRAINS CREDULITY.

The State's accounts of how Congress and the courts have interpreted Section 2, and the VRA more broadly, conflicts with reality. Both parties agree that Section 2, as interpreted in *City of Mobile v. Bolden,* 446 U.S. 55 (1980)—a case brought by private plaintiffs—was originally co-extensive with the Fifteenth Amendment. *See* State Br. 4. And both parties agree that Congress "responded

24

dramatically to *Bolden*'s interpretation of Section 2's liability standard," *id.* at 6, to "expand[] Section 2's prohibitions" on laws burdening voting rights, *id.* at 11.

Yet in the State's telling, Congress—whose principal aim both parties agree was to make it *easier* to establish Section 2 violations—silently made its new more expansive results test available only to the Attorney General. What's more, although "Congress can correct any mistake it sees," *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015), in the State's telling, Congress has never once thought to intervene and instruct federal courts—which have heard hundreds of private Section 2 claims over the past four decades—that their interpretation of this heavily scrutinized statute was completely wrong. Per the State, not even after the Supreme Court's express recognition of Section 2's private right of action in *Morse*[12] did Congress think to correct the courts during the 2006 VRA reauthorization process, despite regularly using the periodic reauthorization to amend the statute, including Sections 3 and 14 in 1975 and Section 2 in 1982.

The State's tortured account is only made more implausible by Congress' unequivocal statements in 1982 that "the existence of the private right of action

---

[12] *Morse*'s holding in 1996 also ends the State's claim (at 34) that there was no "settled interpretation Congress could have ratified" during the 2006 reauthorization. Even if *Morse* were not a holding, the majority's clear directive on Section 2's private right—and the countless cases brought by private plaintiffs nationwide—was more than sufficient to put Congress on notice about how courts were interpreting the provision by 2006.

Appellate Case: 22-1395    Page: 35    Date Filed: 07/15/2022 Entry ID: 5177691

under Section 2 . . . has been clearly intended by Congress since 1965." S. Rep. No. 97-417, at 30 (1982); *see also* H.R. Rep. No. 97-227, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2."). The State calls the 1982 committee reports "fractured"—even though both reports speak directly to what was "intended by Congress" and the State provides no evidence of dissenting views on the issue. The State's claim that these contemporaneous statements of congressional intent—which directly answer this appeal—somehow "hurt[] Plaintiffs' case more than it helps" (State Br. 50), is absurd on its face. This Court should not believe that Congress meant the opposite of what it said.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD PROVIDE AN OPPORTUNITY TO AMEND, AS SECTION 2 CONFERS AN ENFORCEABLE INDIVIDUAL RIGHT.

Even if this Court concludes no Section 2 private right of action exists, Plaintiffs should be permitted to amend their pleadings because private individuals may enforce Section 2 via 42 U.S.C. § 1983. *See Turtle Mountain Band*, 2022 WL 2528256, at *6; *see* Opening Br. 29 n.16; U.S. Br. 27 (explaining the State cannot rebut presumption of enforceability of the federal right conferred by Section 2 under Section 1983); Br. of Lawyers' Comm. for Civil Rights Under Law 19–24.

Forcing Plaintiffs to re-file would be prejudicial and inefficient. The district court has before it a voluminous factual record developed by a five-day

26

preliminary injunction hearing with expert and fact testimony, and has concluded that Plaintiffs have "a strong merits case" to establish a Section 2 violation.  Add. 3; R. Doc. 100.  Given that "[p]leadings are merely to facilitate a proper decision on the merits," this Court should not allow a "[t]echnicalit[y] . . .  to control the law suit."  *McIndoo v. Burnett*, 494 F.2d 1311, 1313 (8th Cir. 1974) (citing *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's unprecedented decision.

27

Dated: July 14, 2022

*/s/ Sophia Lin Lakin*
Sophia Lin Lakin
Jonathan Topaz
Adriel I. Cepeda Derieux
Dale E. Ho
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
jtopaz@aclu.org
acepedaderieux@aclu.org
dale.ho@aclu.org

Ceridwen Cherry
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.
915 15th St NW
Washington, DC 20015
(202) 457-0800
ccherry@aclu.org

Neil Steiner
DECHERT LLP
Three Bryant Park
1095 Avenue of The Americas
New York, NY 10036-6797
(212) 698-3500 | (212) 698-3599
neil.steiner@dechert.com

Matthew F. Williams
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104-4446
(415) 262-4500 | (415) 262-4555
matthew.williams@dechert.com

Gary Sullivan (AR Bar: 92051)
ARKANSAS CIVIL LIBERTIES
FOUNDATION UNION, INC.
904 West 2nd Street
Little Rock, AR 72201
(501) 374-2842
gary@acluarkansas.org

Bryan L. Sells
THE LAW OFFICE OF
BRYAN L. SELLS, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

Angela Liu
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
(312) 646-5800 | (312) 646-5858
angela.liu@dechert.com

Luke M. Reilly
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000 | (215) 994-2222
luke.reilly@dechert.com

*Counsel for Plaintiffs-Appellants*

28

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs-Appellants hereby certify that this brief complies with the requirements of Fed R. App. P. 32(a)(5) and (6) because it has been prepared in Microsoft Office Word 2019 in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,498 words, excluding the parts of the brief exempted under Rule 32(f), according to Microsoft Word.

Finally, I certify that this document and the addendum were scanned for viruses with Microsoft Windows Defender, which is continually updated. According to the virus scan, these files are free of viruses.

*/s/ Sophia Lin Lakin*

Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

29

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Sophia Lin Lakin*

Appellate Case: 22-1395    Page: 40    Date Filed: 07/15/2022 Entry ID: 5177691