No. 22-1395

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

ARKANSAS STATE CONFERENCE NAACP., et al.,
Plaintiffs-Appellants,

v.

ARKANSAS BOARD OF APPORTIONMENT, et al.
Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Arkansas
No. 4:21-CV-01239 LPR (Hon. Lee P. Rudofsky)

---

**Defendants-Appellees' Response to Petition for Rehearing**

---

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

ASHER STEINBERG
  Senior Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-6302
Nicholas.Bronni@arkansasag.gov

**INTRODUCTION**

Nothing in the Voting Rights Act's text or structure confers on private parties a right of action to enforce Section 2. Plaintiffs make no argument to the contrary. Instead, they merely argue that under dicta in a fragmented Supreme Court opinion on a different provision of the Voting Rights Act, and a line of dictum in a 34-year-old opinion of this Court, the panel was bound to recognize a cause of action that the Voting Rights Act's text does not grant them. That is incorrect. The Supreme Court's holdings, not dicta, are what bind this Court. And under that Court's holdings on how to decide if statutes provide a private right of action, this case is not close. Rehearing should be denied.

i

## TABLE OF CONTENTS

Introduction ....................................................................................... i

Table of Contents ............................................................................. ii

Table of Authorities ........................................................................ iii

Statement ........................................................................................... 1

    A.  Statutory Background ........................................................... 1

    B.  Factual and Procedural Background ..................................... 5

Argument ............................................................................................ 7

  I.  The panel's decision does not conflict with any binding precedent. ........................................................................... 7

    A.  The panel's decision does not conflict with *Morse*. ................... 8

    B.  The panel's decision does not conflict with *Roberts*. ............. 11

  II.  The split on whether Section 2 provides a private right of action is extremely shallow and does not merit review. ......................................... 12

  III.  Whether these particular plaintiffs may sue is not en-banc-worthy. ........................................................................ 14

    A.  The issue Plaintiffs' petition presents is only whether *they* may bring Section 2 claims, not whether any private plaintiffs can. ........................................................... 14

    B.  The panel correctly dismissed this case with prejudice. ......... 15

Conclusion ....................................................................................... 17

Certificate of Compliance ............................................................... 18

Certificate of Service ...................................................................... 19

Appellate Case: 22-1395    Page: 3    Date Filed: 12/26/2023 Entry ID: 5347797

# TABLE OF AUTHORITIES

**Cases**

*Ala. State Conf. of NAACP v. Alabama*,
  949 F.3d 647 (11th Cir. 2020) ..........................................................13

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)..........................................................................10

*Allen v. State Bd. of Elections*,
  393 U.S. 544 (1969)............................................................................2

*Brnovich v. Democratic Nat'l Comm.*,
  141 S. Ct. 2321 (2021)........................................................................4

*City of Mobile v. Bolden*,
  446 U.S. 55 (1980)...................................................................... 1, 3, 4

*In re Pre-Filled Propane Tank Antitrust Litig.*,
  860 F.3d 1059 (8th Cir. 2017) (en banc) ...........................................11

*Longaker v. Bos. Sci. Corp.*,
  715 F.3d 658 (8th Cir. 2013) .............................................................16

*Mitchell v. Kirchmeier*,
  28 F.4th 888 (8th Cir. 2022) ..............................................................16

*Mixon v. Ohio*,
  193 F.3d 389 (6th Cir. 1999) .............................................................12

*Morse v. Republican Party of Va.*,
  517 U.S. 186 (1996)..........................................................................8-9

*OCA-Greater Hous. v. Texas*,
  867 F.3d 604 (5th Cir. 2017) .............................................................12

*Permian Basin Area Rate Cases*,
  390 U.S. 747 (1968)..........................................................................10

*Roberts v. Wamser*,
  883 F.2d 617 (8th Cir. 1989) .............................................................11

*Robinson v. Ardoin*,
  86 F.4th 574 (5th Cir. 2023) ..............................................................13

*Sarnoff v. Am. Home Prods. Corp.*,
  798 F.2d 1075 (7th Cir. 1986) .............................................................9

Appellate Case: 22-1395     Page: 4     Date Filed: 12/26/2023 Entry ID: 5347797

*United States v. Rubin*,
609 F.2d 51 (2d Cir. 1979) ...................................................9

*Webber v. White*,
422 F. Supp. 416 (N.D. Tex. 1976). ................................... 2-3

*Ziglar v. Abbasi*,
582 U.S. 120 (2017)...............................................................2

**Statutes**

42 U.S.C. 1983 ........................................................... 5, 14-16

Pub. L. No. 94-73, sec. 401, 89 Stat. 400, 404 (1975) ............2

Voting Rights Act Amendments of 1982, Pub. L. No. 97-205,
sec. 3, 96 Stat. 131, 134 (1982) .........................................4

Voting Rights Act of 1965
52 U.S.C. 10301 (sec. 2).............................................. passim

52 U.S.C. 10302 (sec. 3)........................................ 2, 6-9, 11

52 U.S.C. 10302(b) (sec. 3(b)) ...........................................2

52 U.S.C. 10304 (sec. 5)............................................... 1-3, 6

52 U.S.C. 10306 (sec. 10).............................................. 6, 8-9

52 U.S.C. 10308(a) (sec. 12(a)) ..........................................1

52 U.S.C. 10308(b) (sec. 12(b)) ..........................................1

52 U.S.C. 10308(c) (sec. 12(c)) ..........................................1

52 U.S.C. 10308(d) (sec. 12(d)) .........................................1

**Other Authorities**

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016)..................................9

H. Rep. No. 97-227 (1981) ...................................................4

S. Rep. No. 97-417 (1982) ...................................................4

Appellate Case: 22-1395    Page: 5    Date Filed: 12/26/2023 Entry ID: 5347797

**STATEMENT**

## A.      Statutory Background

Section 2 of the Voting Rights Act was enacted in 1965.  Congress did not provide a private right of action to enforce Section 2 then, and it hasn't enacted one in the 58 years since.

As originally enacted, Section 2 "simply restated the prohibitions already contained in the Fifteenth Amendment," *City of Mobile v. Bolden*, 446 U.S. 55, 61 (1980), prohibiting any voting rule that was "imposed or applied . . . to deny or abridge the right of any citizen of the United States to vote on account of race or color," Voting Rights Act of 1965, Pub. L. No. 89-110, sec. 2, 79 Stat. 437 (1965). The heart of the statute was Section 5's administrative preclearance scheme, whereby the Attorney General precleared new voting laws enacted by jurisdictions with a history of voting discrimination.

Yet even beyond that preclearance mechanism, Congress vested enforcement of the Act in just one place: the Department of Justice.  Congress made several Voting Rights Act violations criminally prosecutable, Voting Rights Act secs. 12(a)-(c), and gave "the Attorney General" a cause of "action for preventive relief" against violations of any of the Act's prohibitions, *id.* sec. 12(d).  That cause of action remains unchanged today.  *See* 52 U.S.C. 10308(d).  By contrast, Congress

1

never enacted an express private right of action to enforce any of the Act's provisions, then or now.

Notwithstanding the lack of a private right of action in the Voting Rights Act's text, in 1969, the Supreme Court— in a decision the Court later characterized as part of a discredited "*ancien regime*," *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017)—implied a private right to enforce Section 5. Acknowledging that the Act "does not explicitly grant . . . private parties" a right of action, *Allen v. State Bd. of Elections*, 393 U.S. 544, 554 (1969), the Court implied one from the Act's "broad purpose," *id.* at 557, claiming the "achievement of the Act's laudable goal could be severely hampered" if only the Attorney General could enforce Section 5, *id.* at 556.

Recognizing that new right, Congress amended Section 3 of the Act in 1975 to provide that the various remedies Section 3 made available in Attorney General enforcement suits[1] were also available "in a proceeding instituted by . . . an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. 10302(b), *amended by* Pub. L. No. 94-73, sec. 401, 89 Stat. 400, 404 (1975). As the first court to interpret that language explained, that change did "not give rise to a substantive cause of action." *Webber v.*

---

[1] Namely, appointment of federal observers, suspension of voting-eligibility tests, and retention of jurisdiction. *See* 52 U.S.C. 10302.

2

*White*, 422 F. Supp. 416, 423 (N.D. Tex. 1976). Rather, it "simply set[] forth the procedure and remedies available in" any causes of action to enforce voting rights that an "aggrieved person" already had, including, after *Allen*, under Section 5. *Id.*

For the first 15 years of the Voting Rights Act's life, private attempts to enforce Section 2 were extremely rare. *See* Appellants' Br. 3 n.1 (identifying just three instances during that period). Since it added nothing to the Fifteenth Amendment, private plaintiffs usually brought only Fifteenth Amendment claims. But in 1980, a rare private suit that brought both reached the Supreme Court. *See Bolden*, 446 U.S. at 58. Addressing the Section 2 claim, the Court "[a]ssum[ed] for present purposes, that there exists a private right of action to enforce this statutory provision." *Id.* at 60 (plurality opinion). In a footnote, it *cf.* cited *Allen*, but also "*but see*" cited two more recent decisions in which the Court declined to imply private rights of action. *Id.* at 60 n.8. But since the Court concluded Section 2's coverage was "no different from that of the Fifteenth Amendment itself," *id.* at 61, it did not need to decide whether a private right existed. Turning to the Fifteenth Amendment claim, the Court held that facially neutral electoral systems violate the Fifteenth Amendment—and thus Section 2—"only if motivated by a discriminatory purpose." *Id.* at 62.

Congress quickly reacted to *Bolden*'s reading of Section 2's scope. If the Fifteenth Amendment only prohibited intentional discrimination, Congress

3

decided, it would decouple Section 2 from the Fifteenth Amendment to proscribe electoral practices that merely "result[]" in unequal electoral opportunity between racial groups. Voting Rights Act Amendments of 1982, Pub. L. No. 97-205, sec. 3, 96 Stat. 131, 134 (1982), codified at 52 U.S.C. 10301.

Yet while Congress responded dramatically to *Bolden*'s interpretation of Section 2's liability standard, it did nothing to respond to *Bolden*'s doubt that Section 2 contained a private right of action. Instead, in committee reports, majorities of the House and Senate Judiciary Committees merely expressed their intentions that one exist, H. Rep. No. 97-227, at 32 (1981) ("It is intended that citizens have a private cause of action."), or claimed one "ha[d] been clearly intended by Congress since 1965," S. Rep. No. 97-417, at 30 (1982). They cited no statutory text—new or old—expressing that intent. Nor did Congress act to create a private right of action when it reauthorized portions of the Voting Rights Act in 2006.

In the years thereafter, many courts entertained private Section 2 suits. But whether a private right of action to enforce Section 2 existed remained an open question, never decided nor litigated. Consequently, in 2021 Justice Gorsuch, joined by Justice Thomas, wrote that whether Section 2 provides a private right of action is "an open question," which "[o]ur cases have assumed—without deciding"—the answer to. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring) (citing *Bolden*, 446 U.S. at 60 & n.8).

4

## B.     Factual and Procedural Background

Arkansas redistricts its legislature every decade after the completion of the Census.  The day Arkansas's new districting plan took effect, Plaintiffs filed suit challenging Arkansas's State House plan.  They claimed that because the plan contained 11 majority-black House districts out of 100, instead of 16 in proportion to the State's 16% black population, the plan violated Section 2.  Op. 2-3.  Plaintiffs sued only under Section 2 itself, not Section 1983.  Op. 22.

Plaintiffs sought a preliminary injunction against the plan.  By the parties' agreement, Defendants' deadline to file a responsive pleading was extended until after the district court ruled on the preliminary-injunction motion.  R. Doc. 47. While the preliminary-injunction motion was pending, the district court ordered supplemental briefing on whether the Plaintiffs had a private right of action under Section 2.  Op. 3, 20.  Defendants argued Section 2 did not provide one.

After supplemental briefing and oral argument, the district court agreed, holding that neither text nor precedent provided a private right of action to enforce Section 2.  Op. 3-4.  Deeming the defect jurisdictional, it dismissed Plaintiffs' suit without prejudice.  Op. 20-21.  Plaintiffs neither sought relief from that dismissal to plead an alternate cause of action, nor refiled their suit under Section 1983 or any other statute.  Op. 22.

On appeal, this Court affirmed. The panel found it "unclear whether [Section] 2 creates an individual right," Op. 6, seeing arguments cutting both ways, Op. 7. It found "[g]reater clarity," however, on whether Section 2 provides a private remedy. Op. 8. The only causes of action the Voting Rights Act's "text provides," it noted, are for the Attorney General. Op. 9. That strongly suggested that "Congress intended to preclude" private rights. *Id.* Section 3's references to voting-rights suits by "aggrieved persons," the panel explained, did not alter that conclusion. That's because Section 3 did not create private causes of action, but merely recognized that some existed—like the one the Supreme Court implied under Section 5—and provided various remedies for them. Op. 9-12.

Turning to Plaintiffs' argument that precedent compelled this Court to recognize a cause of action, the panel, like the district court, held no precedent compelled that conclusion. The panel explained at length that Plaintiffs' reliance on statements about Section 2 in a fragmented Supreme Court opinion on Section 10, *Morse v. Republican Party of Virginia*, was unavailing, because those statements were unreasoned dicta that are inconsistent with the Court's subsequent holdings on private rights of action. Op. 16-18. And it explained that a 34-year-old precedent of this Court that held that losing candidates could *not* sue under Section 2 did not hold—though it may have suggested—that voters could sue. Op. 19-20.

6

Finally, the panel agreed with Plaintiffs that the district court mistakenly viewed the lack of a cause of action as jurisdictional, rather than a merits defect. Op. 20-21. Given that Plaintiffs failed to raise an alternate cause of action in the district court, either before or after dismissal, it held the proper remedy was to modify the district court's jurisdictional dismissal to a merits dismissal with prejudice. Op. 21.

In dissent, Chief Judge Smith took little issue with the bulk of the majority's reasoning. He did not dispute that under the modern approach to identifying causes of action, no private right lies here. He did not contend that Section 3 provided a right of action. Nor did he dispute that the Supreme Court's statements on Section 2 in *Morse* were "technically dicta," Op. 29, or that this Court's prior statements on Section 2's private enforceability were as well, Op. 23 n.8 (describing them as "assum[ptions]"). Nevertheless, he urged deference to those dicta rather than following "the path taken by the majority" and "conduct[ing] a searchingly thorough examination of Section 2's text . . . and the *Sandoval* analysis." Op. 30.

## ARGUMENT

## I. The panel's decision does not conflict with any binding precedent.

At the panel stage, Plaintiffs primarily argued that Section 2 was privately actionable because Section 3's references to unspecified "proceedings" by "aggrieved persons" to "enforce the voting guarantees of the fourteenth or fifteenth

7

amendment" implied that private parties could sue to enforce the entirety of the Voting Rights Act. Op. 9-14. Recognizing the weakness of that argument, which even the dissent did not accept, they abandon it, never citing Section 3—or indeed any other textual basis for a private right.

Instead, they simply argue that binding precedent mandates this Court atextually imply a private right of action. That argument fares no better. As the panel held, the statements Plaintiffs rely on are "background assumptions—mere dicta at most"—and unreasoned dicta at that. Op. 17. Rather than being bound by those dicta, this Court is bound by the Supreme Court's holdings on private rights of action. And under those holdings, Plaintiffs all but concede that they cannot prevail.

A.    The panel's decision does not conflict with *Morse*.

Plaintiffs first claim the panel's decision contravenes the Supreme Court's decision in *Morse v. Republican Party of Virginia*. There, the Court held in a fragmented opinion that Section 10 of the Voting Rights Act, which authorized suits by the Attorney General to enjoin unconstitutional poll taxes, implicitly authorizes private suits. Justice Stevens, writing for two Justices, primarily reached that conclusion under *Allen* and Section 3's references to constitutional voting-rights suits by aggrieved persons. 517 U.S. 186, 230-34 (1996) (opinion of Stevens, J.). Justice Breyer, writing for three Justices, primarily concurred on the basis that "the rationale of *Allen*" applied to Section 10. *Id.* at 240 (Breyer, J., concurring in the

8

judgment). However, both opinions briefly adverted to another line of reasoning. Citing the 1982 committee reports for the proposition that Section 2 was privately actionable, they reasoned it would be "anomalous" for Section 10 to be treated differently from "§ 2 and 5." *Id.* at 232 (Stevens, J.); *id.* at 240 (Breyer, J.) (reasoning from "§§ 2 and 5").

Plaintiffs, seizing on these fleeting references to Section 2, claim they were necessary to *Morse*'s result. That badly overreaches. The contention that denying a right of action under Section 10 would be anomalous relied equally on Sections 2 *and 5*—the latter of which the Court had actually held was privately enforceable. Absent Justices Stevens's and Breyer's assumptions about Section 2, the argument would be just the same. Moreover, that rationale was only one strand of reasoning in opinions that relied far more heavily on *Allen* and Section 3. That makes them textbook dicta: "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding." Bryan A. Garner et al., *The Law of Judicial Precedent* 46-47 (2016) (quoting *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986)).

Yet even if Justices Stevens's and Breyer's assumptions about Section 2 had played a larger role in *Morse* than they had, they still would not be binding. As the panel explained, "a 'judge's power to bind is limited to the issue that is before him.'" Op. 17 (quoting *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979

Appellate Case: 22-1395    Page: 14    Date Filed: 12/26/2023 Entry ID: 5347797

(Friendly, J., concurring)). Of course, a court's reasons for deciding that issue are binding, but courts cannot make binding precedent on the meaning of one statute by interpreting it in "unrelated cases" about a different one. *Permian Basin Area Rate Cases*, 390 U.S. 747, 775 (1968).

Switching tack, Plaintiffs claim that even if *Morse*'s statements on Section 2 were dicta, they must be followed anyway. Pet. 9. To be sure, Supreme Court dicta is persuasive authority. But as the panel explained, *Morse*'s dicta were both unreasoned and inconsistent with how the Supreme Court approaches "implied-cause-of-action questions today." Op. 18. Indeed, just "five years after *Morse*," *id.*, a majority of the Court held that even when interpreting statutes enacted when the Court's looser approach reigned, "text and structure," not its old purposive test, control. *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001)).

Plaintiffs don't dispute that under the Supreme Court's current approach the panel got the cause-of-action question right. Instead, they merely insist it is "not this Court's role" to consider whether Supreme Court dicta survive later developments in the law. Pet. 10. But that confuses dicta with holdings. "Only the Supreme Court may overrule one of its precedents," *id.* (citation omitted), but this Court may not—indeed must not—follow Supreme Court dicta when it is "enfeebled by a later statement" of that Court, Op. 18 (alteration omitted) (quoting *In re*

10

*Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc)).  As the panel explained, that is precisely what happened after *Morse*.

      B.    <u>The panel's decision does not conflict with *Roberts*.</u>

Plaintiffs next claim the panel's decision conflicts with *Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989), a 34-year-old decision of this Court that predates key developments in the Supreme Court's cause-of-action jurisprudence by over a decade.  In *Roberts*, this Court held that losing candidates cannot sue under Section 2.  Assuming without analysis that "aggrieved persons" under Section 3 may sue under Section 2, it concluded that losing candidates are not "aggrieved persons," "a category that we hold to be limited to persons whose voting rights have been denied or impaired."  *Id.* at 624.  As the panel explained, *Roberts* is certainly binding precedent on who is and isn't an "aggrieved person" under Section 3, but its assumption that aggrieved persons could sue under Section 2 was unnecessary to its result.  Op. 19-20.  Moreover, it only assumed that aggrieved persons have statutory standing, not a private right of action, which are "closely related" but distinct concepts.  Op. 20.

Plaintiffs insist this understates the scope of *Roberts*'s holding.  But other than italicizing the phrase "we hold," Pet. 11—which only prefaced *Roberts*'s statement about who counts as an "aggrieved person"—they offer no explanation of why *Roberts*'s assumption that "aggrieved persons" could sue was part of its

11

holding.  After all, *Roberts* held the plaintiff there was *not* an aggrieved person, so it was unnecessary to decide the scope of any right of action that aggrieved persons had.  Moreover, this is hardly a case where the panel's opinion created two diverging lines of precedent for later panels to choose between.  Instead, the panel fully discussed *Roberts* and explained why its assumption did not control.  There is no intra-circuit conflict.

## II. The split on whether Section 2 provides a private right of action is extremely shallow and does not merit review.

Plaintiffs next argue rehearing is warranted because the panel decision conflicts with decisions of three other circuits.  In reality, it directly conflicts with only one, and that decision is almost entirely unreasoned.

Section 2 was amended to go beyond the Fifteenth Amendment's protections in 1982, but no court of appeals even indirectly addressed the right-of-action issue until 1999.  That year the Sixth Circuit reasoned in only two sentences that because Section 2 expressly regulates states, it abrogated state sovereign immunity from suit.  *Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999).[2]  Almost two decades later, the Fifth Circuit, simply citing *Mixon*, held Section 2 abrogates state sovereign immunity.  *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 & n.46 (5th Cir. 2017).

---

[2] Plaintiffs quote a later sentence in *Mixon* that states individuals may sue under Section 2, *see id.* at 406, but that question wasn't litigated in *Mixon*.  In fact, Ohio conceded the point.  Appellee's Br. 34, 1998 WL 35157707.

Appellate Case: 22-1395     Page: 17     Date Filed: 12/26/2023 Entry ID: 5347797

The Eleventh Circuit, over Judge Branch's dissent, followed suit, but its decision was vacated as moot and no longer binds that circuit. *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020), *vacated*, 141 S. Ct. 2618 (2021). Finally, last month the Fifth Circuit held that Section 2 provides a private right of action, explaining it was bound to reach that conclusion given its prior holding that Section 2 abrogated sovereign immunity from private suit. *Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023) ("We consider most of the work on this issue to have been done by our *OCA-Greater Houston* holding . . . The purpose [of abrogating sovereign immunity] surely is to allow the States to be sued by someone.").

The conflict between the panel's decision and this line of unreasoned precedent does not merit rehearing. Only one circuit has squarely held Section 2 provides a private right of action, and that decision ultimately rests on a mere two sentences in *Mixon* that illogically reasoned that because Section 2 regulates state conduct, it must authorize private suits against States themselves, not just their officials. The panel's opinion, by contrast, is—as the dissent acknowledged—the first "searchingly thorough examination of Section 2's text . . . and the *Sandoval* analysis" undertaken by any court of appeals. Op. 30. This Court should not vacate that opinion to align itself with one or two circuits' unreasoned assumptions.

Appellate Case: 22-1395     Page: 18     Date Filed: 12/26/2023 Entry ID: 5347797

**III.    Whether these particular plaintiffs may sue is not en-banc-worthy.**

A.    The issue Plaintiffs' petition presents is only whether *they* may bring Section 2 claims, not whether any private plaintiffs can.

Plaintiffs claim that the panel's decision has all but rendered Section 2 a dead letter in this Circuit.  Pet. 14-15.  Yet they also claim that even under the panel's holding, they could revive their Section 2 claims by the mere "formality" of "add[ing] a claim under [Section] 1983."  Pet. 17.  That reveals what is really at stake in this case: whether these plaintiffs may pursue Section 2 claims, not whether any private plaintiffs may.  Indeed, in persuading the Fifth Circuit that the Section 2 right-of-action issue was too unimportant to take en banc, *see* Appellants' 28(j) Citation (Dec. 18, 2023), the same interest organization that represents Plaintiffs here argued the question was "of limited practical significance" because the plaintiffs in that case also pled a cause of action under Section 1983.  Appellees' Resp. to Rehearing Pet. 7, *Robinson v. Ardoin* (No. 22-30333).  The only difference between that case and this one is that the plaintiffs here failed to plead Section 1983 or seek leave to amend to do so.

To be certain, Defendants don't agree that Plaintiffs should be given a third chance to plead Section 1983 after failing to twice in the district court.  *See* III.B, *infra*.  Nor do Defendants agree that Section 1983 provides a cause of action to enforce Section 2.  *Cf.* Op. 7 (discussing reasons to doubt Section 2 creates an individual right).  But Plaintiffs are right that the panel opinion does not foreclose

14

using Section 1983 to enforce Section 2 outside this case. Indeed, the panel expressly left the question open. Op. 22. So whether Section 2 is privately enforceable in this Circuit remains an open question; the panel opinion only foreclosed private enforcement by *these* particular plaintiffs, on account of their pleading failures. Whether Section 2 is ultimately held privately enforceable may be an important question, but whether these plaintiffs may enforce Section 2 is not.

B. <u>The panel correctly dismissed this case with prejudice.</u>

Plaintiffs finally attack the panel's decision to modify the district court's jurisdictional dismissal without prejudice to a merits dismissal with prejudice. Understandably so: it is that fact-bound decision, not the panel's interpretation of Section 2, that ultimately bars Plaintiffs' suit. Yet Plaintiffs do not even attempt to argue that issue satisfies the criteria for rehearing en banc, and it does not merit panel rehearing either. Plaintiffs' suit was correctly dismissed with prejudice because Plaintiffs never sought leave to add an alternate cause of action below.

The district court believed the lack of a cause of action went to jurisdiction, not the merits, and therefore dismissed Plaintiffs' suit without prejudice. Op. 21. The panel, however, agreeing with Plaintiffs that the lack of a cause of action went to the merits, modified the dismissal to be with prejudice. Op. 20-21. That, after all, is the form a merits dismissal of a complaint usually takes in cases where—as here—"the plaintiff has not indicated how [it] would make the complaint viable . . .

15

by submitting a proposed amendment." *Mitchell v. Kirchmeier*, 28 F.4th 888, 903 (8th Cir. 2022).

Plaintiffs, nevertheless, argue that because there is an amendment they *could have* attempted to make—adding a Section 1983 claim—dismissal with prejudice is improper. To the contrary, "[l]eave to amend generally is inappropriate" where the plaintiff never sought that leave in the district court. *Id.* Here, Plaintiffs neither sought leave to add a Section 1983 claim when the district court first raised the cause-of-action issue, nor when it dismissed Plaintiffs' suit. Instead, Plaintiffs first raised Section 1983 on appeal. Yet like any other non-jurisdictional issue, to seek leave to amend on appeal the issue must be preserved below. *See Longaker v. Bos. Sci. Corp.*, 715 F.3d 658, 663 (8th Cir. 2013). Dismissal with prejudice was correct.

16

## CONCLUSION

The petition for rehearing should be denied.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

ASHER STEINBERG
  Senior Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-6302
Nicholas.Bronni@arkansasag.gov

*Attorneys for Appellees*

17

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 40(a)(3) because it contains 3,900 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/  *Nicholas J. Bronni*

Nicholas J. Bronni

18

**CERTIFICATE OF SERVICE**

I certify that on December 26, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ *Nicholas J. Bronni*

Nicholas J. Bronni

Appellate Case: 22-1395     Page: 24     Date Filed: 12/26/2023 Entry ID: 5347797