

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.519.7359
F/212-549-2675
WWW.ACLU.ORG

September 30, 2022

Michael E. Gans, Clerk of Court
United States Court of Appeals, Eighth Circuit
Thomas F. Eagleton Courthouse
111 South 10th Street
St. Louis, MO 63102

      Re:    Supplemental Authority in *Arkansas NAACP et al., v. Arkansas Board of Apportionment et al.*

Dear Mr. Gans,

      Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the Appellants respectfully submit supplemental authority addressing whether private parties may enforce Section 2 of the Voting Rights Act ("VRA")—the precise issue on appeal. Plaintiffs-Appellants' Opening Br. 2, 27-43.

      On September 26, a three-judge district court held unanimously that "the text and structure of the [VRA] … indicate that Congress has provided an implied private cause of action for Section 2 claims." *Ga. State Conf. NAACP v. Georgia*, No. 1:21-CV-5338-ELB-SCJ-SDG, slip op. at 4 (N.D. Ga. Sept. 26, 2022) (per curiam) (attached as Exhibit A).

      Applying the two-part *Sandoval* framework, the court held first that Section 2 both "identifies a specific 'right' in explicit terms" and "expressly defines the 'particular class of persons'" who possess that right. *Id.* at 9 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001)). "If that is not rights-creating language," it concluded, "we are not sure what is." *Id*. The court also rejected the argument that "Section 2 confers only a 'group' right,'" as inconsistent with *Sandoval* and Section 2 itself. *Id.* at 12.

      Second, the court concluded that the VRA's structure "implies a private remedy to enforce Section 2." *See id.* at 13-19. It determined that Section 3's reference to "aggrieved persons," and Section 14's reference to "prevailing part[ies]," make "clear" that private parties can sue under some VRA provisions. *Id.* at 14. Noting that Sections 3 and 14 provide remedies for suits "under whatever … statutes enforce the voting guarantees of the fourteenth or fifteenth amendment," *id.*, the court then concluded that "an action to enforce the protections of Section 2 is inevitably … an action that enforce[s] [those] voting guarantees," *id.* at 17. The court found it immaterial that Section 2 is not perfectly coextensive with the Reconstruction Amendments

1

because Section 2 does "cover[] the same voting-related ground that the amendments cover." *Id.* Finally, the court rejected the claim that Section 12's cause of action for the Attorney General overrode Congress' intent to provide private enforcement as manifested in Sections 2, 3, and 14.

Respectfully,

Sophia Lin Lakin
Attorney for the Appellants
American Civil Liberties Union
Foundation, Inc.

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **GEORGIA STATE CONFERENCE OF THE NAACP, et al.,** | **CIVIL ACTION FILE** |
| **Plaintiffs,** | **No. 1:21-CV-5338-ELB-SCJ-SDG** |
| **v.** | **THREE-JUDGE COURT** |
| **STATE OF GEORGIA, et al.,** | |
| **Defendants.** | |

Before BRANCH, Circuit Judge, JONES and GRIMBERG, District Judges.

PER CURIAM:

<u>ORDER</u>

This matter is before the Court on a motion to dismiss filed by the defendants. Doc. No. [63]. Defendants seek dismissal of the claims the plaintiffs have asserted under Section 2 of the Voting Rights Act of 1965 (VRA), Pub. L. No. 89-110, 79 Stat. 437. For the reasons we set out below, the motion to dismiss is **DENIED**.

## I.     BACKGROUND

On December 30, 2021, the plaintiffs in this matter—Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, and Galeo Latino Community Development Fund—filed a complaint against the State of Georgia, Governor Brian Kemp, and Secretary of State Brad Raffensperger.  Doc. No. [1].  In their complaint, the plaintiffs challenge, on both constitutional and statutory grounds, the legality of Georgia's recently redrawn legislative maps for the state house and senate, as well as its maps for Georgia's federal congressional representatives.  *See id.*  The plaintiffs have asserted constitutional claims under the Fourteenth and Fifteenth Amendments and statutory claims under Section 2 of the VRA.  *Id.* ¶¶ 232–57.

This three-judge panel was formed pursuant to 28 U.S.C. § 2284 shortly after the plaintiffs filed suit.  Doc. No. [8].  The plaintiffs subsequently filed an amended complaint reasserting the same constitutional and statutory claims, Doc. No. [59], and on May 20, 2022, the defendants filed the motion to dismiss that is the subject of this order.  Doc. No. [63].  In their motion to dismiss, the defendants argue the plaintiffs' statutory claims under Section 2 of the VRA should be dismissed because Congress has not provided a private cause of action

2

for Section 2 claims.  *Id.*  The plaintiffs filed a response to the motion, Doc. No. [66]; the defendants filed a reply, Doc. No. [69]; and the Court held a hearing on the motion.  Doc. No. [77].  The motion is now ripe for review.

## II.    LEGAL STANDARD

The defendants have moved to dismiss the plaintiffs' Section 2 claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[1]  Doc. No. [63], at 1.  A complaint fails to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   ANALYSIS

The defendants' motion to dismiss the plaintiffs' Section 2 claims raises a single question of law: whether there is a private cause of action for Section 2

---

[1] Defendants also styled their motion as seeking relief under Federal Rule of Civil Procedure 12(b)(1), Doc. No. [63], at 1, which governs dismissal for lack of subject-matter jurisdiction.  At the motion hearing, however, the defendants clarified—in keeping with binding Eleventh Circuit precedent—that their motion to dismiss for lack of a private cause of action does not raise jurisdictional concerns and is properly evaluated under Rule 12(b)(6).  Doc. No. [77], at 3; *see Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1293 (11th Cir. 2010) (noting that "[t]he existence of a private right of action is an issue separate and distinct from the issue of standing . . . and is not jurisdictional" (quotations and citations omitted)).

3

challenges.   There are colorable positions on both sides of that question.

However, for the reasons we set out below, we find sufficient evidence within

the text and structure of the VRA to indicate that Congress has provided an

implied private cause of action for Section 2 claims.   Thus, we deny the

defendants' motion.

We begin by introducing the key statutory provision at issue: Section 2 of

the VRA.  *See* 52 U.S.C. § 10301.   Section 2 provides that:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2)[2] of this title, as provided in subsection (b).
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to

---

[2] Section 10303(f)(2) prohibits any voting qualification or practice that results in the denial or abridgment of the right to vote protections for members of a language minority group.  52 U.S.C. § 10303(f)(2).

4

> participate in the political process and to elect
> representatives of their choice. . . .

52 U.S.C. § 10301.  *See also Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1329 (11th Cir. 2021) (recognizing that Section 2 prohibits voting practices and procedures that intentionally or unintentionally "result[] in a denial or abridgment of the right to vote on account of race or color").

Section 2 contains no express cause of action for private parties to sue to enforce its protections.  Nor is an express private cause of action set out anywhere else in the VRA.[3]  Therefore, the question we must answer is whether the VRA provides an ***implied*** private cause of action for Section 2 challenges.  The relevant framework for analyzing implied causes of action is set out in *Alexander v. Sandoval*, 532 U.S. 275 (2001).  In *Sandoval*, the Supreme Court noted that, in the "*ancien regime*" of decades past, the Court had taken, at times, a permissive approach to recognizing implied causes of action to sue under federal statutes. *Id.* at 287.  But the Court also noted that this permissive approach did not comport with the limited role of the judiciary.  *See id.* at 286–87.  It emphasized that, "[l]ike

---

[3] By contrast, and as we discuss in more detail below, Section 12 of the VRA sets out an express cause of action for the Attorney General of the United States to sue to enforce both Section 2 and several other provisions of the Act.  *See* 52 U.S.C. § 10308(d).

substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at 286 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).  Thus, the Court said, in a properly understood implied-cause-of-action analysis, we look to the statute for both a private right and a private remedy:

> [t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id.* at 286–87 (citation omitted).  As this passage makes clear, before finding an implied cause of action to sue under a federal statute, a court must ensure that the statute at issue contains both (1) "'rights-creating' language" and (2) language demonstrating Congress's intent to provide a private remedy to enforce the right created.  *Id.* at 286–88; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002).

Further, the Supreme Court in *Sandoval* identified the tools courts should use in performing the substantive test for analyzing implied causes of action — namely, the statute's text and structure.  *See* 532 U.S. at 288 & n.7.  The Court noted that, as with all statutory interpretation questions, in an implied-cause-of-

6

action analysis, "the interpretive inquiry begins with the text and structure of the statute." *Id.* at 288 n.7.  Moreover, the inquiry can typically "end" with those same considerations as well.  *See id.* at 288 (noting that the Court "beg[an] (and f[ou]nd that [it] c[ould] end) [its] search for Congress's intent with the text and structure of" the statute at issue in that case).

We now apply *Sandoval*'s two-part framework for analyzing implied causes of action to the question before us.  We first consider whether Section 2 contains the necessary "rights-creating" language.  We find that it does.  We next consider whether the VRA contains language implying a private remedy to enforce Section 2.  Although the answer to this question is a closer call, we find that the necessary private remedy language is evident on the face of the statute as well.  Thus, although the defendants have raised a colorable challenge to the availability of a private cause of action under Section 2, we ultimately deny their motion to dismiss the plaintiffs' Section 2 claims.

### A.    Private Right

At the first step of the *Sandoval* framework, the question we must answer is whether Section 2 contains "rights-creating" language.  *See* 532 U.S. at 288.  In answering this question, we must decide whether the statute "confer[s] rights on

7

a particular class of persons." *Id.* at 289 (quotation omitted); *see also Gonzaga*, 536

U.S. at 284 (noting that, "[f]or a statute to create . . .  private rights, its text must

be phrased in terms of the persons benefited" (quotation omitted)).

Section 2 provides that:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. . . .

52 U.S.C. § 10301.

We think it obvious that, by its clear terms, Section 2 guarantees a

particular individual right to all citizens: *i.e.,* a right not to have one's vote denied

or abridged on account of race or color.  The key language in the statute is

contained in subsection (a): "No voting . . . . standard, practice, or procedure shall

8

be imposed or applied . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." *Id.* § 10301(a).  This provision identifies a specific "right" in explicit terms.  And it expressly defines the "particular class of persons," *Sandoval*, 532 U.S. at 289, that holds the right.  If that is not rights-creating language, we are not sure what is.

Notably, Section 2's language discussing the right not to have one's vote denied or abridged on account of race or color is similar to language highlighted in *Sandoval* as a specific example of a "rights-creating" provision.  In *Sandoval*, the Supreme Court held that there was no implied private cause of action to enforce disparate-impact regulations promulgated pursuant to Section 602 of Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 252, as amended, 42 U.S.C. § 2000d-1. [4]  *See* 532 U.S. at 288–93.  That statutory provision contained no

---

[4] Section 602 of Title VI provides that:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be

language creating any rights at all.  However, in holding that Section 602 created

no rights, the Court contrasted Section 601 of Title VI which contained language

_____

> consistent with achievement of the objectives of the statute
> authorizing the financial assistance in connection with
> which the action is taken.  No such rule, regulation, or order
> shall become effective unless and until approved by the
> President.   Compliance   with   any   requirement   adopted
> pursuant   to   this   section   may   be   effected   (1)   by   the
> termination of or refusal to grant or to continue assistance
> under such program or activity to any recipient as to whom
> there  has  been  an  express  finding  on  the  record,  after
> opportunity for hearing, of a failure to comply with such
> requirement, but such termination or refusal shall be limited
> to  the  particular  political  entity,  or  part  thereof,  or  other
> recipient as to whom such a finding has been made and,
> shall be limited in its effect to the particular program, or part
> thereof, in which such noncompliance has been so found, or
> (2) by any other means authorized by law: *Provided, however*,
> That no such action shall be taken until the department or
> agency  concerned  has  advised  the  appropriate  person  or
> persons of the failure to comply with the requirement and
> has  determined  that  compliance  cannot  be  secured  by
> voluntary means.  In the case of any action terminating, or
> refusing to grant or continue, assistance because of failure to
> comply with a requirement imposed pursuant to this section,
> the head of the Federal department or agency shall file with
> the  committees  of  the  House  and  Senate  having  legislative
> jurisdiction  over  the  program  or  activity  involved  a  full
> written report of the circumstances and the grounds for such
> action.  No such action shall become effective until thirty
> days have elapsed after the filing of such report.

42 U.S.C. § 2000d-1.

that *did* create rights.  *See id.* at 288 (referencing the "'rights-creating' language"

of Section 601).  Section 601 of Title VI says:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  Section 601 of Title VI's "No person . . . shall, on the ground

of race, color, or national origin, be . . . subjected to discrimination under any

program or activity receiving Federal financial assistance" language closely

resembles Section 2 of the VRA's "No voting . . . . standard, practice, or procedure

shall be imposed or applied . . . in a manner which results in a denial or

abridgement of the right of any citizen of the United States to vote on account of

race or color" language.  *Compare* 42 U.S.C. § 2000d, *with* 52 U.S.C. § 10301(a).

Both provisions clearly confer private rights.

In arguing otherwise, the defendants assert that Section 2 confers only a

"group" right, not an "individual" right, and therefore Section 2 creates no rights

sufficient to support a private cause of action.  *See* Doc. No. [69], at 5–6; Doc. No.

[77], at 3–4; *see also Gonzaga*, 536 U.S. at 288 (noting that a statute that is "not

concerned with whether the needs of any particular person have been satisfied

11

. . . cannot give rise to individual rights" necessary for a private cause of action (quotations and citation omitted)).  We are unpersuaded.  As the defendants point out, in its subsection (b), Section 2 speaks in terms of a plaintiff's obligation to provide proof that operates at the "group" level—*i.e.*, evidence that "members of a class of citizens . . . have less opportunity than other members of the electorate to participate in the political process."  52 U.S.C. § 10301(b).  But the statute makes clear that this "group"-oriented proof establishes "[a] violation of subsection (a)."  *Id.*  And subsection (a), as we have discussed, creates a right— namely, not to have one's vote denied or abridged on account of race or color— that individual citizens enjoy.  Moreover, the fact that the statute confers rights on a "group" of people does not suggest that the group, rather than the persons, enjoy the right the statute confers.   If that were true, the Supreme Court's directive that we examine whether the statute at issue "confer[s] rights on a particular *class* of persons" would make little sense.  *Sandoval*, 532 U.S. at 289 (quotation omitted and emphasis added).

Section 2 contains the "rights-creating" language necessary for an implied private cause of action.  We next consider whether the VRA contains language providing for a private remedy necessary for an implied private cause of action.

B.     **Private Remedy**

At the second step of the *Sandoval* framework, we must determine whether Section 2 "displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286–87.  For this inquiry, "[t]he determinative question is one of statutory intent." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quotation omitted).  In other words, "there is an implied cause of action only if the underlying statute can be interpreted to disclose [Congress's] intent to create one." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164 (2008). The way we divine Congress's intent in this context, so to speak, is simply by considering the statute's "text and structure." *Sandoval*, 532 U.S. at 288.

The parties agree Section 2 itself contains no language implying a private remedy within its four corners.  *See* Doc. No. [63-1], at 3; Doc. No. [66], at 7. However, that does not end our inquiry; we must consider whether the statutory structure of the VRA contains language that implies a private remedy to enforce Section 2.  In this inquiry, two other sections of the VRA—Section 3 and Section 14—warrant close attention.  *See* 52 U.S.C. §§ 10302, 10310.

Section 3 of the VRA is an ancillary provision that provides for remedial oversight measures, such as the appointment of federal observers, in jurisdictions

13

in which proceedings are brought by either the Attorney General or "an aggrieved person" to "enforce the voting guarantees of the fourteenth or fifteenth amendment." *See* 52 U.S.C. § 10302(a)–(c). Section 14 is another ancillary provision that sets out various rules and procedures for "enforcement proceedings" under the VRA, including a provision allowing for attorney's fees to a "prevailing party, other than the United States" in an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e).

For our purposes, the key language in these provisions is Section 3's mention of actions by "aggrieved person[s]" who are not the Attorney General and Section 14's mention of the availability of attorney's fees to "prevailing part[ies]" who are not the government. We think it clear—as do both the plaintiffs and the defendants in this case—that these passages imply that private parties have a right to sue to enforce *some* provision or provisions of either the VRA or other federal laws. *See* Doc. No. [66], at 7–8; Doc. No. [77], at 4–5; *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) (in holding that there was an implied cause of action for private parties to sue to enforce Section 901 of Title IX, noting that a related provision "authorizes federal courts to award attorney's

14

fees to the prevailing parties, other than the United States," which "explicitly presumes the availability of private suits").  Of course, the revelation that provisions other than Section 2 of the VRA (Sections 3 and 14) imply a private cause of action of some kind does not end our inquiry into Section 2.  Rather, it raises another question: Under *what* statutes do Sections 3 and 14 imply a right to sue—and is Section 2 among them?

The plain textual answer is that Sections 3 and 14 imply a private right to sue under whatever statute or statutes "enforce the voting guarantees of the fourteenth or fifteenth amendment," a key provision in both Sections 3 and 14. *See* 52 U.S.C. §§ 10302(a), (b), (c), 10310(e).  The interpretive question we must answer, then, is whether an action under Section 2 enforces the guarantees of the Fourteenth or Fifteenth Amendments.  If it does, Sections 3 and 14 through their references to suits by "aggrieved person[s]" other than the Attorney General and "prevailing part[ies]" other than the government, imply that private parties can sue to enforce Section 2.

To determine whether a Section 2 action enforces the voting guarantees of the Fourteenth or Fifteenth Amendments, we must understand the nature of the amendments' voting-related protections and how they intersect with the

15

protections of Section 2.  The Fourteenth Amendment's Equal Protection Clause provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Fifteenth Amendment provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."  U.S. Const. amend. XV, § 1.  Although these provisions are quite different, they overlap in one vital respect—they both prohibit race-based discrimination as it relates to voting.  *See Greater Birmingham Ministries*, 992 F.3d at 1321.   However, both amendments prohibit only ***intentional*** race discrimination.  *See id.*

With respect to race-based discrimination, Section 2, by contrast, does all that the Fourteenth and Fifteenth Amendments do and more.  In its original 1965 form, Section 2 "closely tracked the language" of the Fifteenth Amendment. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2331 (2021).  But in 1982, Congress expanded Section 2's scope to prohibit both intentional ***and unintentional*** race-based discrimination in voting matters.   *See Greater Birmingham Ministries*, 992 F.3d at 1328–29 (noting that, "[u]nlike discrimination claims brought pursuant to the Fourteenth and Fifteenth Amendments, which

16

require proof of both discriminatory intent and actual discriminatory effect, the language of Section 2(a) of the VRA requires only proof of discriminatory 'results,' not of discriminatory intent").

Given this backdrop, an action to enforce the protections of Section 2 is inevitably—at least in part—an action that "enforce[s] the voting guarantees of the fourteenth or fifteenth amendment" as contemplated in Sections 3 and 14 of the VRA. *See* 52 U.S.C. §§ 10302(a)–(c), 10310(e). To be sure, as the defendants have emphasized, Section 2 prohibits a significant swath of activity—*i.e.*, unintentional race-based discrimination—that the Fourteenth and Fifteenth Amendments do not. *See* Doc. No. [69], at 6–7. The statute and the amendments, however, also share a core prohibition against intentional race-based discrimination. So the argument that a Section 2 action enforces a set of guarantees entirely distinct from than the guarantees of the amendments strikes us as odd. The fact that Section 2's voting protections go beyond the protections of the Fourteenth and Fifteenth Amendments does not change the fact that the statute covers the same voting-related ground that the amendments cover— meaning, that a Section 2 action enforces the voting guarantees of the amendments at least to some extent, while also doing more besides.

17

Because a Section 2 action enforces the voting guarantees of the Fourteenth and Fifteenth Amendments, a Section 2 action is among the proceedings that Congress has implied, in Sections 3 and 14 of the VRA, that private parties may assert. Thus, we find that the VRA displays the necessary "intent to create not just a private right but also a private remedy" with respect to Section 2. *Sandoval*, 532 U.S. at 286–87.

Although we find sufficient evidence on the face of the statute that Congress intended to imply a private remedy for Section 2 actions, we note the defendants assert a persuasive argument supporting the "no cause of action" view. *See* Doc. No. [63-1], at 3–4, 7; Doc. No. [69], at 7. That argument is this: in Section 12 of the VRA, Congress has provided an express cause of action for the Attorney General to sue to enforce both Section 2 and other provisions of the Act.[5]

---

[5] In relevant part, Section 12 of the VRA provides that:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 10301, 10302, 10303, 10304, 10306, or 10307 of this title, section 1973e of title 42, or subsection (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order, and including an order

*See* 52 U.S.C. § 10308(d).   In *Sandoval*, the Supreme Court mused that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  532 U.S. at 290.  Congress's provision of an express cause of action for the Attorney General to enforce Section 2 is certainly a thumb on scale against finding an implied private cause of action for anyone else to enforce the same provision.  That said, on balance, the fact that Congress provided an express cause of action for the Attorney General to sue to enforce the VRA is not a "suggestion . . . so strong that" it overcomes Congress's references to suits by private parties, in other sections of the VRA.  *Id.*  While the availability of an express cause of action for the government certainly "suggests" Congress has not implied a private cause of action elsewhere, *id.*, it is not a dispositive consideration.

For the reasons we have stated, we find sufficient evidence within the text and structure of the VRA to indicate that Congress has provided an implied

_____

> directed to the State and State or local election officers to require them (1) to permit persons listed under chapters 103 to 107 of this title to vote and (2) to count such votes.

52 U.S.C. § 10308(d).

private cause of action for Section 2 claims.  That said, we note that the implied-cause-of-action question in this case is a close one that has recently garnered some attention.    Two members of the Supreme Court have noted that the question whether the VRA provides an implied private cause of action for Section 2 challenges remains an open one in that Court.  *See Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., joined by Thomas, J.) (stating that the Supreme Court's "cases have assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under § 2," and that "th[e] Court need not and does not address that issue today").  A district court in another circuit has recently, in a thorough and well-articulated order, adopted the view that Congress has not provided an implied cause of action for Section 2 cases.  *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, No. 4:21-cv-1239, 2022 WL 496908, at *9–17 (E.D. Ark. Feb. 17, 2022).  Conversely, we note that five members of the Supreme Court, some years earlier, suggested in dicta that Congress has provided an implied cause of action for private suits under Section 2.  *See Morse v. Republican Party of Va.*, 517 U.S. 186, 230–35 (1996) (plurality opinion); *id.* at 235–40 (Breyer,

20

J., concurring in the judgment).[6]  To the extent further clarification in this area of law may be necessary, we welcome further guidance.  But under the existing framework as provided in *Sandoval*, we find that Congress has provided an implied cause of action for private parties to sue to enforce Section 2 of the VRA.

## IV.    CONCLUSION

The motion to dismiss is **DENIED**.

**IT IS SO ORDERED** this 26th day of September, 2022.

/s/ Elizabeth L. Branch_____
**HONORABLE ELIZABETH L. BRANCH**
**UNITED STATES CIRCUIT JUDGE**


/s/ Steve C. Jones_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**


/s/ Steven D. Grimberg_____
**HONORABLE STEVEN D. GRIMBERG**
**UNITED STATES DISTRICT JUDGE**

---

[6] We note, importantly, that the Supreme Court's holding in *Morse* concerned only Section 10 of the VRA and did not concern Section 2. *Morse*, 517 U.S. at 234.

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Sophia Lin Lakin*